JOHN S. PHILLIPS, *et al.*, Appellants, *vs.* GOAH W. STEWART, *et al.*, Respondents.

1. *Lands, sale of—Inadequacy of consideration—Intervention of equity.*— Where the sale of land is open and not shown to be affected with fraud and unfair dealing, the rule is that mere inadequacy of consideration is not sufficient to authorize the intervention of equity, unless it be so gross as of itself to indicate fraud or imposition on the part of the purchaser.
2. *Executions—Power of single executor to act, when co-executors are appointed, but fail to qualify.*—Where the terms of a will authorize the " executors " to sell lands, but only one of them qualifies, he has the power, acting alone, to make the sale. In such case, the co-operation of additional executors is not required. (See Wagn. Stat., p. 72, § 11.)

*Appeal from Pemiscot Circuit Court.*

*Louis Houck*, for appellants.

*Glover & Shepley*, for respondents.

I. Where land is sold at auction at 10 cents an acre, the fair value being 25 cents an acre, the sale is not invalid for inadequacy of consideration. (50 Ills., 455 ; Duncan vs. Saunders, 43 Mo., 297 ; Brown vs. Hann. & St. Jo. R. R., 48 Mo., 495 ; Cadwallader vs. West, 48 Mo., 483 ; 1 Strong Eq., 11th ed., sec. 244 note.)

WAGNER, Judge, delivered the opinion of the court.

The plaintiffs filed their petition in the nature of a bill in equity to set aside a conveyance made by Case, as executor of Robert Stewart, deceased. It was alleged that the testator Stewart was seized at his death of a large body of land and of personal property nearly sufficient to satisfy his debts ; and that by his will he directed his debts to be paid out of his real estate, after exhausting his personal property ; that Case, the executor of the will, fraudulently combined with the other defendants to sell six thousand acres of land, the property of the estate, for the purpose of cheating and defrauding the heirs and creditors, and that the sale was made and the lands conveyed by the executor for the joint benefit of the executor and the defendants ; that the six thousand acres were fraudulently sold to Stewart, one of the defendants, for six hundred

dollars, a grossly inadequate price, and that the land was worth at the time not less than twenty thousand dollars; that Stewart, after he received the deed, took possession of the land and realized a large amount of money from the sale of wood, and that in the sale of the land it was put up in such large quantities that many bidders could not purchase.

The answer denied all the allegations in the bill. The cause was heard before the court on the proofs, and the issues were found for the defendants, and plaintiff's bill was dismissed. The evidence utterly failed to show any combination between the executor and the purchaser, or that there were any fraudulent practices at the sale. The sale of so large a quantity of land for so small a price, at first blush, appears startling, but the situation and real value of the land materially changes its aspect. It was swamp or overflowed land, and, with the exception of very inconsiderable portions, was worthless for cultivation. The evidence shows that from two to three months in the year it was nearly all submerged, and its principal value consisted in its timber. Great diversity among the witnesses existed as to its real worth. There was one piece called the "long field," including nearly a hundred acres that was estimated by some to be worth five dollars an acre, but it was shown that its cultivation had been abandoned, and that it had been permitted to grow up in brush, and a part of it had gone in the river. One witness stated that the whole land was worth two dollars and a half an acre, and another placed it at one dollar and twenty-five cents; other witnesses stated that, take it all together, it was worth from twenty-five to fifty cents per acre, and yet others put it at only eight and ten cents per acre; and there was still other evidence showing that a large proportion of it was not worth paying taxes on. It is very evident that the land was not valuable, and it is fair to conclude that taken as a whole its marketable value did not exceed from thirty to forty cents per acre.

It is well settled that inadequacy of price, unaccompanied with fraud or unfair dealing, is not a distinct ground for re-

lief in equity jurisprudence. There are sometimes cases of such unconscionableness or inadequacy in a bargain, that they demonstrate some gross imposition or some undue influence, and there the interference is placed upon the satisfactory ground of fraud. Thus in Brown vs. Hannibal & St. Jo. Railway (43 Mo., 294), eleven thousand four hundred and eighty eight acres of valuable land, claimed to be worth $114,800, was levied upon to satisfy an execution for less than $150, and was sold in a body and purchased for thirty-five dollars and sixty cents, and we held that it was not only a flagrant abuse of judicial process, but that it was a case calling for equitable interference. In Irwin vs. Parham, (12 How., 197) it was decided that a purchase of a debt for $260,000, secured by mortgage for $600, at a sheriff's sale, was not necessarily fraudulent and void for inadequacy of price. That case goes to a great extent and perhaps to the utmost limit, but where the sale is open and unaffected, the rule undoubtedly is, that mere inadequacy is not sufficient, unless it be so gross as of itself to prove fraud or imposition on the part of the purchaser. No such inadequacy is exhibited in this case. The purchase was at an under value, but not more so than is exhibited in a great many public sales, the validity of which was never questioned, and could not be, without disturbing the very foundations of titles. The sale was conducted fairly; there were a good many in attendance upon it, and the auctioneer testifies that he tried a long time to get a higher price.

It is contended that the property would have brought more had it been put up in smaller tracts. A witness by the name of Jackson says that he was present at the sale, and wanted to buy 400 acres, and that he had a slight idea of purchasing it if the land had been sold in so small a quantity, but would not have paid more than from twenty-five to fifty cents an acre for it. A witness who was clerk at the sale and made a memorandum of it, shows how the sale was conducted, and the price the land brought. The first tract put up contained 1990 acres, and was sold for $100; the next lot contained 1960 acres, and was sold for $120; the third lot contained

687 acres, and brought $140; the fourth lot contained 1010 acres, and sold for $90, and the fifth and last lot containing 1191 acres sold for $150, aggregating six hundred dollars in all.

Now, if Jackson wanted to buy 400 acres—and he says that he had but a very slight idea of buying it—the facts show that he could have obtained in some instances about double, and in others nearly five times that amount for less than he was willing to pay for 400 acres. The presumption is that he was not very anxious and no loss was suffered by not dividing the land to accommodate him.

The will gave the executor power to sell the land at either public or private sale for the payment of debts, and it is shown that the estate was insolvent, and the executor offered. to sell any of the land in any quantity to the creditors in payment of their debts, but they declined purchasing, and refused to bid at the sale.

It was attempted to show that the purchaser has since derived some profit from the land on account of the sale of wood and logs; but if the sale was valid, whatever he has made since cannot affect his title.

One other point is insisted upon. The will appointed four persons as executors and only one, the defendant Case, qualified. The will giving the power to sell and convey the land for the payment of debts, uses this language: "which my executors are hereby authorized and empowered to sell and convey for such purpose." It is now urged that Case alone could not execute the will; that it was necessary for all the donees to join in the execution of the power. But there is nothing in this objection. Only one of them qualified, and the statute declares that where there are two or more persons appointed co-executors in any will, none shall have authority to act as such, or intermeddle, except those who give bond. (1 Wagn. Stat., p. 72, § 11.) Case alone having qualified, the whole duty and burden of executing the power devolved upon him, and him alone. We have failed to see anything in this record which would justify an interference with the judgment below. Affirmed. The other judges concur.