JULIET P. KLINE ET AL., Appellants, v. JOHN C. VOGEL ET AL., Respondents.

November 22, 1881.

1. Mere inadequacy of price is not sufficient cause for setting aside a sale under a deed of trust.

2. That a row of houses were not sold separately is not ground for setting aside such a sale, where it does not appear that the trustee was asked to so offer them.

3. In the absence of anything in the pleadings or evidence to show that the plaintiff is willing to pay the defendant the amount properly chargeable against the property, and it does appear that the defendant is willing to

convey to the plaintiff upon the payment of such charges, the bill is
properly dismissed, on hearing.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

PATTISON & CRANE, for the appellants.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respon-
dents.

THOMPSON, J., delivered the opinion of the court.

This is in the nature of a suit in equity to set aside a sale
of property under a deed of trust. The property was sold
in August, 1877, and this suit was brought in March, 1880,.
or nearly three years afterwards. The plaintiffs had pur-
chased the property in question as tenants in common, and,.
for convenience, had taken the title in the name of the plain-
tiff Pattison, and he had executed and recorded a declaration
of the trusts upon which he held the legal title. At the
time it was thus purchased by the plaintiffs, there was an
encumbrance upon it by deed of trust to the amount of
$5,000. The defendant had purchased the notes secured
by this deed of trust, and the plaintiff Pattison paid the
interest-notes as they fell due in the defendant's hands ; but.
when the principal note for $5,000 fell due, which was in
February, 1877, the plaintiff could not pay it, and Mr.
Vogel, at the request of Mr. Pattison, indulged them until
some time in the summer, and finally agreed to surrender
up the note if Mr. Pattison would execute to him a quit-
claim deed. Mr. Pattison executed and sent from New
York, where he was on business, a quit-claim deed ; but.
when it was tendered to Mr. Vogel, he refused to accept it,
on account, as he says in his testimony, of the conditions
accompanying it. What these conditions were he does not.
state, nor is it at all material, for he was under no legal
obligation to accept the deed when it arrived ; it was a.
promise without consideration, and he was at liberty to
change his mind at any time before it was executed. He then

advertised the property for sale in the regular way, and in
accordance with the terms of the deed of trust, in the St.
Louis *Daily Journal;* and Mr. Logan, who was the agent
for the renting of the property, informed Mr. Pattison of
this fact, and sent a copy of the advertisement to him.   Mr.
Pattison, however, did not return to attend to the matter,
nor, so far as the testimony shows, did he appoint Mr.
Logan or anyone else to look after it; but, on the con-
trary, he went to Maine and remained there, either for
health or pleasure, until September.   His co-plaintiffs were
non-residents of the country, though two of them were
temporarily in St. Louis at the time.   When the property
was exposed for sale, ten or a dozen persons were assembled.
The property consisted of seven houses in a row, built
upon a tract of ground having a front of one hundred feet.
Each house contained four rooms, and they were constructed
so that each floor was generally rented to a separate tenant.
No one requested the trustees at the sale to offer the houses
separately, and the entire property was therefore put up for
sale in a lump.   No one bid on it except the defendant, and
it was struck off to him for $500.   The evidence is con-
flicting as to the value of the property at the time, testi-
mony of various witnesses placing it at from $3,000 to
$10,500.   It had been suffered to get out of repair; the
street was not made in front of it; it was rented, when
rented, to a poor class of tenants.   The ground on which
it stood was estimated to be worth $10 a foot.   Real prop-
erty was greatly depressed on account of labor troubles,
and it was very difficult to make sales at any price.

The foregoing is the substance of the testimony.   The
plaintiffs, as already stated, waited nearly three years and
then brought the present action.   They allege in their peti-
tion a willingness to pay to the defendant whatever is justly
due on the $5,000 note secured by the deed of trust on the
property, but they do not allege that they have made any

tender of such sum, or of any sum, nor do they offer to pay it into court.   On the other hand, the defendant sets out in specific items the amount of the note, with accrued interest, and the amount which he has expended on the property in the way of taxes, insurance, and repairs, exclusive of his own time.   From this he deducts the rents which he states he has received, and offers to convey the property to the plaintiffs if they will pay to him the balance, or pay it into court subject to his order.

This offer has not been accepted.   On the contrary, it appears that as soon as the defendant Vogel was apprised of the bringing of this suit, he addressed, on March 25, 1880, through his attorney, Mr. Haeussler, to Mr. Pattison, a letter setting out the same items of debt, interest, and expenditure on account of the property, deducting therefrom the rent, striking the balance, namely, $7,045.02, and concluding in these words: "If this sum is paid by April 1, 1880, I will voluntarily give you all you ask in your suit.   If you do not pay, you should dismiss your action."   Mr. Pattison replied as follows: "My dear sir: The proposition of Mr. Vogel contained in your letter of yesterday is refreshingly cool, to say the least. Money is not so plentiful with me that I can afford to throw it away in that way."

It is but just to Mr. Pattison to say that he gave, on the witness-stand, as a reason for this reply, that he thought that in three years much more than $500 had been received for rents ; that he could not believe that Mr. Vogel was in earnest in making such a demand, nor did he believe that any such sum was justly due to Mr. Vogel.   He told Mr. Haeussler that he was willing to pay whatever was justly due on the note secured by the deed of trust.

And so the suit went on.   Mr. Vogel testified, referring to the above letter of Mr. Haeussler, that he gave Mr. Pattison, through his attorney, a statement of all he had paid

out and received, and was then, and still was at the trial, willing to give up the property if Mr. Pattison .would pay him what he was out, and the debt and interest.

We have derived no aid from the plaintiffs' brief.   After giving a brief statement of the facts, it consists of the following sentence and no more : ''Appellants submit this case on the foregoing statement, as they conceive that no argument of theirs could possibly make a stronger case than the bare statement of the naked facts.''

We are thus left to conjecture as to the ground on which we are expected to reverse the decree of the circuit court. We know of no ground.   Mere inadequacy of price does not furnish such a ground, in the absence of fraud, and especially where the party complaining takes no measures to protect his rights, by bidding at the sale or otherwise. *Landrum* v. *Bank*, 63 Mo. 48 ; *Phillips* v. *Stewart*, 59 Mo. 491 ; *Vail* v. *Jacobs*, 7 Mo. App. 571.   Whether the houses should have been sold separately or together was a matter of discretion in the trustees, and we cannot say that it was abused, especially as but one witness has testified to an opinion that they would have sold to better advantage if offered separately.   *Bales* v. *Perry*, 51 Mo. 449 ; *Chesley* v. *Chesley*, 54 Mo. 347 ; *Kelly* v. *Hurt*, 61 Mo. 463 ; *Benkendorf* v. *Vincenz*, 52 Mo. 441 ; 2 Jones on Mort., sect. 1859.   Aside from this, no excuse is offered for the delay of nearly three years in bringing this suit.   But, more than all, there is nothing in the petition or in the evidence to show that the plaintiffs are any more willing or ready to pay to the defendant the amount due and chargeable against the property on account of the debt, interest, taxes, repairs, etc., than they were when it was advertised for sale in 1877.   On the other hand, it is shown by the answer and the evidence, that the defendant has three times given them the opportunity, once in his letter of March 25th, already quoted, afterwards in his answer filed on April 7, 1880, and again at the trial, to take the property off his hands by

simply making him whole. There is nothing whatever in the testimony to indicate that we could do anything more than this for the plaintiffs by reversing this judgment and ordering an account. We do not wish to be understood as holding that the trustees exercised their discretion properly in putting up the property for sale in a lump, instead of offering it separately. We rest our judgment upon all the facts taken together; and our judgment is that, so taking them, they do not constitute a case for equitable relief.

The judgment is affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.