HARDWICKE v. HAMILTON *et al.*, *Appellants*.

Division Two, May 8, 1894.

1. **Fraud**: PRESUMPTION. Fraud is never presumed, but must be proved.

2. ———: EVIDENCE: BURDEN OF PROOF. It may be inferred from facts and circumstances, the burden resting upon the party asserting it to make it manifest.

3. **Deed of Trust**: NOTICE OF SALE: JUNIOR MORTGAGEE. The law, in the absence of fraud or undue advantage, imposes no duty upon one holding a mortgage or deed of trust to notify a junior incumbrancer of intention to sell under his prior security.

4. ———: SALE: INADEQUACY OF CONSIDERATION. Mere inadequacy of price, unaccompanied by fraud or unfair dealing, is not a sufficient ground for setting aside a sale under a mortgage or deed of trust.

5. ———. Evidence examined in an action to set aside a sale under a deed of trust for alleged fraudulent conduct and held insufficient and the judgment of the trial court reversed.

*Appeal from Ray Circuit Court.*—HON. JOSEPH E. BLACK, Special Judge.

REVERSED.

*F. W. Griffin, F. M. Hayward* and *James L. Farris* for appellants.

(1) On the evidence the judgment ought to be reversed, the facts not warranting the decree entered. (2) No fraud can be predicated of a neglect to pay a debt. (3) The concession made by plaintiff that the trustee and *cestui que trust* acted in all things *bona fide* operates to preclude him from relief in this suit. (4) The Sextons should have been made parties.

*H. F. Simrall, T. N. Lavelock* and *Claude Hardwicke* for respondent.

(1) As the Sextons were not shown to have any interest in the property in controversy, after the trustee's sale, they were not necessary parties. *Fox v. Meyer*, 54 N. Y. 130; *Buffington v. Harvey*, 95 U. S. 103; *Campbell v. Jones*, 25 Minn. 155; *Potter v. Phillips*, 44 Iowa, 357; Waite on Fraudulent Conveyances, sec. 129. (2) Inadequacy of price at which property sold was sufficient notice, aside from other knowledge the purchaser had, that fraud was committed by the sale. *Runkle v. Gaylord*, 1 Nev. 123. (3) The inadequacy of the price for which the property sold was so great that the trustee should not have closed the sale when there were but two bidders present, unless he knew that all persons interested were present or had assented to a sale at such inadequate price. *Vail v. Jacobs*, 62 Mo. 130; *Stoffel v. Schroeder*, 62 Mo. 147; *Jacobs v. Alexander*, 11 Paige (N. Y.) 619. (4) As the land consisted of two separate, distinct and non-

contiguous tracts and, according to the evidence, would have sold better in separate parcels, the trustee failed to show proper regard for plaintiff's interest by selling *en masse*. *Chesley v. Chesley*, 54 Mo. 347; *Tatum v. Holliday*, 59 Mo. 422; *Goode v. Comfort*, 39 Mo. 313; *Gray v. Shaw*, 14 Mo. 341; *Taylor's Heirs v. Elliott*, 32 Mo. 172, 175. (5) The respondent, being second mortgagee and having his mortgage properly recorded before sale under or default in payment of interest under the first deed of trust, was entitled to the same consideration by the trustee as the mortgagor was entitled to; and the sale should not have been made by the trustee without any regard for his interests.

BURGESS, J.—Action to set aside a sale by trustee under deed of trust. On the fifteenth day of November, 1887, Mina R. Sexton and Warren B. Sexton, her husband, were the owners of two hundred and forty acres of land in Ray county, upon which they, on that day, negotiated a loan with the Missouri Trust Company of Sedalia, Missouri, for the sum of $1,700, and gave their note in payment thereof, secured by deed of trust which was duly recorded; said note became due and payable on the first day of November, 1892, and had ten interest coupons thereto attached whereby they promised to pay interest on said principal sum semi-annually at the rate of seven per cent. per annum from the date of the note to its maturity.

It is provided in said deed of trust that if said coupon notes or coupons or either of them should not be paid when due, then all of said notes might, at the option of the holder thereof, become due and payable and the said B. H. Ingram, trustee, should proceed to sell said real estate, for cash, at the courthouse door, in the county of Ray, first giving twenty days notice of the time, terms and place of sale, by publication in

some newspaper published in said county, for the pur-- pose of satisfying said note.

On the eighth day of July, 1887, said Warren B. Sexton and his wife, Mina R. Sexton, became indebted to the plaintiff, Hardwicke, in the sum of $1,700, to secure the payment of which, they executed to him their promissory note, due on the eighth day of July, 1889, the interest, if not annually paid, to become as principal and bear the same rate of interest, and for the purpose of securing its payment they executed and delivered to the plaintiff, Haff, as trustee, their certain deed of trust on said land, which was also duly recorded in said Ray county.

The land, at the time of the sale, was worth $4,000 and brought $1,850. It was all sold in one body, but the grantors in the deeds of trust did not request that it be sold otherwise. One forty acres of it was sold a few days after the trustee's sale to the defendant Deacy for $800.

None of the parties to the first deed of trust are made parties to this action. The petition contains the following allegations:

"Plaintiffs state that, although said note to said Missouri Trust Company was not due for so long a time, yet the said Warren B. Sexton, conspiring with defendants, the Central Bank and defendant Hamilton, to cheat, wrong, swindle and defraud said Hardwicke, who had a subsequent lien on said land, declined to pay the interest on said note to said company, and, by false statements and representations made to them, the said trust company (at a time when the said trust company did not want to make a sale under said deed of trust) procured that said lands should be offered for sale by said B. H. Ingram, the trustee for said trust company under their said deed of trust, and plaintiffs state that by a false and fraudulent representation made by said

Sexton he did procure that said lands should be set up under a pretended advertisement and that the same was exposed for sale at a pretended sale of said lands by said Ingram on the twentieth day of August, 1888.

"Plaintiffs state that said Sexton, in conspiracy with defendant Central Bank procured that said lands be bid in at said pretended sale by their mutual counsellor as also their mutual confidential adviser, Robert H. Hamilton, defendant herein, and that a pretended deed be made to said defendant Hamilton, the same that is recorded in record book 44, page 183, of the deed record of Ray county, Missouri.

"Plaintiffs state that said deed so made to said Hamilton is void and is inoperative, except as an assignment of the interest of the said Missouri Trust Company on account of the following facts:

"Prior to making of said pretended sale by said Ingram, said Warren B. Sexton and defendant Robert H. Hamilton and defendant Central Bank confederated and conspired to cheat and defraud plaintiff Hardwicke out of his said debt and his security therefor in this, that said Hardwicke lived in Clay county, Missouri, and did not take the newspaper in which said real estate was pretended to be advertised; that the defendants aforesaid knew these facts; that said Warren B. Sexton was, or claimed to be, indebted to said Central Bank, which indebtedness was unsecured, and in order that said Central Bank might overreach and take advantage of said Hardwicke and defeat him in collecting his said debt and deprive him of the benefits of said deed of trust to plaintiffs and defeat his lien on said real estate and vest the title to said real estate in said Central Bank or secure one for their benefit for securing the debt of said Central Bank for a nominal consideration free and clear of the deed of trust securing the debt of plaintiff Hardwicke, said defendant conceived the idea

of allowing default to be made in the payment of the interest on said note to said Missouri Trust Company and by fraudulent representations to said Missouri Trust Company and said Ingram procuring a sale of said real estate collusively and without plaintiff Hardwicke's knowledge and having said Hamilton buy in said real estate for the benefit of said Central Bank at a nominal consideration and that, pursuant to such fraudulent arrangement, said Sexton failed and refused, without defendant Hardwicke's knowledge, to pay off and discharge one of said interest or coupon notes when the same became due, and fraudulently and falsely represented to said Missouri Trust Company and said Ingram that he had sold said real estate to a person who assumed the payment of the note to said Missouri Trust Company and who had refused to pay said interest or coupon notes and who had decided to forfeit and give up said real estate and had abandoned the same and that he wished said deed of trust foreclosed in order that he might be protected and that he might again get the title to said property in his own name and procure a new loan and that by such and other fraudulent representations said Missouri Trust Company was induced to permit said Ingram to make an attempted or pretended sale of said real estate.

"That believing said false and fraudulent representations, said Missouri Trust Company requested said Ingram to sell said real estate, and said Ingram caused a notice of said sale, or pretended notice, to be published in a newspaper published in Richmond, Missouri, and had said pretended sale, but believing that the sale was consented to by all parties concerned, and that the price at which it should be sold, and who should secure the purchase, was agreed upon and consented to by all parties who had any interest in said real estate (he not knowing at that time of plaintiffs'

interest), and believing that said sale was made solely to transfer the title to said Sexton or to some one whom said Sexton might designate, and that such transfer was consented to by all the parties concerned; failed to exercise proper care in executing the trust reposed in him, in that he failed to sell said real estate in separate and distinct parcels, although said real estate lay in two separate and noncontiguous parcels, and would have sold for a great deal more had it been sold in separate parcels than when sold all together; and failed to exercise proper care in exciting competition at said sale among bidders; and failed to exercise ordinary care and prudence in procuring an adequate price for said real estate, but instead of exercising such care, allowed said real estate to be sold to said defendant Hamilton, for the benefit of defendant Central Bank, for the nominal and inadequate price of $1,860, though said real estate was well worth $7,000, and if said sale had been fairly conducted, and said land sold in separate parcels it would have sold for over $5,000 at said sale.

"That said Sexton, at the time said deed of trust was given securing said note to said Hardwicke, promised and assured said Hardwicke that all interest on the debt secured by said deed of trust to said Ingram would be paid promptly when due, and said Sexton failed to keep said promise, although said Hardwicke believed that said Sexton would make such payments as he had agreed when said deed of trust was given. That said defendants Hamilton and Central Bank well knew at the time said sale was made that plaintiff Hardwicke held a note secured by a second deed of trust on said real estate, and they knew that said Sexton was endeavoring to defraud plaintiff Hardwicke out of his security for said note, and knew that said Sexton was endeavoring to conceal all knowledge

from said Hardwicke of said pretended sale, and knowing these facts they joined with and lent their aid to said Sexton in perpetrating said fraud.

"Plaintiffs further state that, if said Hardwicke had had any knowledge of said pretended sale, he would have bid, or caused to be bid, at least $4,000 for said real estate; but, not seeing or hearing of said pretended advertisement, and believing said Sexton would keep said coupon notes paid when the same became due, as he assumed he would, he had no knowledge of said pretended sale until some time after it was made.

"Plaintiffs further state that said pretended sale was made for a nominal and grossly inadequate price on account of the misrepresentations made to Ingram, and that said Ingram failed to properly exercise and perform his duties as trustee in accepting such a grossly inadequate price.

"Plaintiffs further state that said Ingram further failed to properly exercise his duties as trustee in offering said land for sale all in one body, and not selling it in parcels, when said land lay in separate and noncontiguous parcels and a great deal of it was in timber and would have sold, if sold in separate parcels, for over $5,000.

"Plaintiffs state that, by reason of the failure of said Ingram to properly exercise the trust imposed upon him, and by reason of the fraudulent concealment of said pretended sale from plaintiffs, that said land sold for a nominal sum, instead of selling for more than enough to pay off and discharge both said note to said Missouri Trust Company and said note to plaintiff Hardwicke; and that, as said Sextons are insolvent, plaintiff Hardwicke will lose his money loaned to said Sextons, if said sale is not set aside and declared void."

To the foregoing allegations the defendant made denial. The court made special finding of facts substantially as set forth in the petition and sustaining the allegations therein, rendered a decree setting aside the sale by the trustee, Ingram, the deed from him to Hamilton, except in so far as the land conveyed by Hamilton to Deacy is concerned, declared and decreed that said sum of $1,860 bid for said land, less the sum of $800 paid by said Deacy and seven per cent. interest be made a special charge and first lien on said land in favor of said Central Bank, and that said sum of $1,700 be made a special charge and lien in favor of said Hardicke against said land and ten per cent. per annum thereon from said eighth day of July, 1887, compounding annually, subject to the first lien of the Central Bank; and rendered judgment against said bank for all costs of this cause, except costs adjudged in favor of said Deacy and against said Hardwicke. Defendants appealed.

The fraud charged is the keeping of the plaintiff Hardwicke in ignorance of the trustee's sale and inducing the Missouri Trust Company to make it so that defendant bank might buy in the property at less than its value and thus deprive him of his security and the means of collecting his debt. Fraud is never presumed but must be proved, yet it is not necessary that it be shown by direct evidence; it may be established by facts and circumstances and the burden of proof rests upon him who asserts it to make it manifest. The conspiracy charged was between Warren B. Sexton and the Central bank.

In the absence of fraud or some undue advantage being taken, the law imposes no duty upon a person holding a prior mortgage or deed of trust to notify one holding a similar subsequent or junior lien or incumbrance upon the same property of his intention to sell

the property under his mortgage or deed of trust.    All that is required of him is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith. . It will not do that suspicious circumstances may be connected with the sale, but proof of its unfairness and that it was fraudulent must be produced.    It is admitted by counsel for plaintiffs, in their brief, that there was no dishonorable intention on the part of trustee Ingram or the Trust Company, and, unless the evidence shows a conspiracy between Warren B. Sexton and the Central bank to defraud the plaintiff Hardwicke, then he has not shown himself entitled to any equitable relief. The only evidence that has a tendency to show a conspiracy was that Sexton was indebted to the bank several thousand dollars; that he and Hamilton, its cashier, were on very friendly terms; that Sexton had promised Hardwicke that he would keep the interest on the debt secured to the Trust Company paid up; that he stated to him from time to time that he was doing so, which was untrue and that he told the Trust Company that the interest would not be paid and to sell the property and that Sexton's brother and John M. Hamilton were present at the trustee's sale when Hamilton bought the land and stated to Ingram, the trustee, that he was representing Warren B. Sexton. It is true that Warren B. Sexton testified that after the sale he asked the bank officers to surrender his notes which they held against him and while his explanation for making such request is by no means satisfactory, he, at the same time, admits that they refused to comply therewith and that the bank still holds them.    Do the facts, as thus stated when considered in the most favorable light for plaintiff make out a case of conspiracy to defraud Hardwicke, when

all of the other facts attending the advertisement and sale by the trustee are taken into consideration.

The only persons by whose statements Hardwicke was deceived were Warren B. Sexton and Esteb Sexton promising to keep the interest to the Trust Company paid up and Esteb to look after his interest in the property, which they failed to do; but the evidence did not in any manner connect the defendants with any of these promises or their violation. Sexton testified that he had no arrangement with Central bank in regard to the sale and purchase of the property and no evidence was introduced to the contrary except inferentially. He was not present at the sale. The sale was advertised in one of the weekly papers published in Ray county. It was open to the public and at the usual hour, where every person had an opportunity to bid that felt so inclined. No combination between bidders has been shown and no unfairness or fraud.

Mere inadequacy of price, unattended by fraud or unfair dealing, is not a distinct ground for setting aside a sale (*Philips v. Stewart*, 59 Mo. 491) and in this case there was no such inadequacy of price as would justify the inference of fraud from that fact alone.

Ingram testified that when offering the land for sale he made public inquiry if there was any person present who desired to bid on any subdivision, and, meeting with no response, he sold all the land at one sale. One who takes so perilous a form of security as a second mortgage, must ever be on the alert, lest by his want of diligence, he may suffer the loss of his debt thereby secured. In this case plaintiff Hardwicke unfortunately depended upon the promises of those who either intentionally deceived him, or inadvertently neglected his interests, with which the evidence fails to connect the defendants and for which they are

in nowise responsible. The proof fails to show any conspiracy or fraudulent conduct on the part of the defendants, by which the judgment of the court below can be sustained. Judgment reversed. All of this division concur.