ORR v. McKEE *et al.;* BUNKER *et al., Appellants.*

Division Two, March 31, 1896.

**Mortgage:** SALE UNDER POWER, WHEN SET ASIDE: EQUITY. In a suit to set aside a sale made under a power contained in a mortgage, the evidence disclosed that plaintiff held the first note due under the mortgage, and that H., one of the defendants, held the other. Plaintiff testified that after the notes (which were for $1,000 each) became due, H.'s agent asked him to join in the foreclosure sale, that he did not then determine to do so, and the agent promised to see him again before advertising the property, but did not do so, and that plaintiff did not learn of the foreclosure until after the sale. The agent testifying for defendant denied in substance plaintiff's testimony. The property, which was worth $1,500, was sold for $100. *Held*, that the decree of the trial court setting the sale aside would not be disturbed.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Henry Wollman* and *Alexander New* for appellants.

(1) The court does not find that this property was sold for a grossly inadequate price, but even if it had

been there would have been no justification for setting
aside the sale. *Kline v. Vogel*, 11 Mo. App. 211; *Mil-
lion v. McRee*, 9 Mo. App. 344; *Gordon v. O'Neill*, 96
Mo. 350; *Walters v. Hermann*, 99 Mo. 529; *Maloney
v. Webb*, 112 Mo. 585, and cases cited. (2) Equity
will never set aside a transaction because of a mistake
when both parties have the same knowledge, or the
same means of knowledge. *Bales v. Perry*, 51 Mo.
453. (3) Equity will not set aside a transaction when
a party was indolent and made a mistake because of
lack of diligence on his own part. *Brown v. Fagan*, 71
Mo. 568; *Schaeffer v. Schilling*, 6 Mo. App. 49. (4)
If they claim this was a mistake of law as to their con-
struction of the instrument, it is a rule of equity that it
will never set aside a transaction because of a mistake
of law, unless there are circumstances in addition to
the mistake of law, such as to excite suspicion of fraud,
imposition, deception, or undue influence on the one
side and imbecility, credulity or blind confidence on
the other. *Kleimann v. Gieselmann*, 114 Mo. 445.
(5) Nothing of that kind is claimed in this case. There
were no confidential relations existing between Orr and
Bagley, and Orr didn't claim that he relied on Bagley,
or that Bagley had any influence over him, or that
Bagley was in any better position to know than he.
(6) Equity will never interfere on the ground of mis-
take upon possibilities nor upon a mere preponderance
of evidence, but only upon a certainty of error. *Sweet
v. Owens*, 109 Mo. 7.

*Teasdale, Ingraham & Cowherd* for respondent.

(1) Plaintiff being the holder of the first of a series
of notes secured by the deed of trust, had the first lien.
*Mitchell v. Ladew*, 36 Mo. 526; *Hurck v. Erskine*, 45
Mo. 486; *Mason v. Barnard*, 36 Mo. 384; *Winters v.*

*Bank*, 33 Ohio St. 253; *Richardson v. McKim*, 20 Kan. 350; Jones on Mtgs. [4 Ed.], sec. 606; *Flower v. Elwood*, 66 Ill. 450; *Bank v. Bank*, 9 Wis. 57; *Freeman v. Elliott*, 48 Mo. App. 74. (2) Not having requested the trustees to sell, he had the option when sale was made under the second note, to either disregard the foreclosure and seek to enforce the lien against the land, or to affirm the foreclosure and take the proceeds of the sale. *Boogher v. Frazier*, 99 Mo. 325. (3) The letter from the sheriff to the plaintiff, received May 3, requesting him to bring in his note and receive his share of the proceeds of the sale, indicates that the parties understood that the plaintiff was cooperating in, or bound by the sale. The trustee's deed, recorded April 30, also indicates that the sale was made for default in both notes. (4) The notice of trustee's sale recites that the sale was made at the request of the holder of one of such notes, but does not designate which one. (5) The evidence shows the sale was made for a grossly inadequate price. (6) All the facts in evidence taken together warranted the court in setting aside the sale. *Vail v. Jacobs*, 62 Mo. 133; *Maloney v. Webb*, 112 Mo. 585; *Holdsworth v. Shannon*, 113 Mo. 508. Equitable aid is the only relief after the trustee has once sold. *Koester v. Burke*, 81 Ill. 439. (7) There is no question about the power of a court of equity to set aside the sale; it is a question of discretion. *Hubbard v. Jarrett*, 23 Md. 83; *Cassady v. Wallace*, 102 Mo. 575. (8) And moreover the cases agree in holding that a junior mortgagee is not allowed to divest the lien of the prior mortgage, by any purchase of a lien superior to both. *Woodbury v. Swan*, 59 N. H. 22; *Smith v. Lewis*, 20 Wis. 350; *Goodrich v. Kimberly*, 48 Conn. 295; *Strong v. Burdick*, 52 Iowa, 630. (9) There was no laches on the part of plaintiff.

He filed his bill within three days after learning of the sale.

BURGESS, J.—On the eleventh day of January, 1887, Jennie McKee and William McKee, her husband, purchased from the defendant Bunker a lot in Troost Highlands, an addition to Kansas City, Missouri, at the price of $3,000, paying in cash $1,000, and on the same day executed to defendant Winner as trustee for Bunker, a deed of trust on the same lot, to secure the payment of two promissory notes for $1,000 each, given by Mrs. McKee and husband for the balance of the purchase money, one due in one year from its date and the other in two years from its date. Bunker indorsed both notes and sold the last one becoming due to Julia Heath of New Hampshire, and the other to the International Loan and Trust Company of Kansas City. McKee paid the interest on the Heath note regularly until July 11, 1891. When the other note became due plaintiff took it up.

After default had been made in the payment of interest on the Heath note, she, through her agent V. W. Bagley, had the sheriff of Jackson county, the trustee Winner having refused to act, advertise the property for sale under the deed of trust. This was done by notice given in the Kansas City *Daily Journal,* for more than twenty days before the day of sale, to wit, April 26, 1892. The property was sold on that day by the sheriff at the usual hour, at the front door of the postoffice building and custom house, according to the notice, and was bought in by defendant Withers, an employee of Bunker, for $100, and was paid for with the money of the defendant Finley, who was also an employee of Bunker.

Within ten days after the sale, Orr brought this suit to set aside the sale, on the ground of fraud and inade-

quacy of price, alleging that the property was of the value of $3,000 at the time of the sale under the deed of trust, fraud on the part of the defendants, and that he and Julia Heath were mutually mistaken as to the necessity of the holders of the notes, under the provisions of the deed of trust, to join in a request to the trustee to sell the property, and that she, Julia Heath, afterward learning that such was not the case confederated with defendants Withers, Finley, and Bunker to accomplish the sale without the knowledge of plaintiff.

The court made the following finding:

"The evidence in this case is somewhat conflicting, but the conduct of the plaintiff in not attending the trustee's sale can not be explained except upon the idea of a mistake between him and Bagley, concerning the necessity of their presence at the sale. From any point of view the property sold at a very low price, and this, in connection with the evident misunderstanding of the parties directly interested must be held to be sufficient in a court of equity to set aside the sale; and this will be done, and a decree entered accordingly."

From the judgment the defendants Bunker, Finley, and Withers appealed.

While the evidence was conflicting as to the value of the lot at the time of the sale, some of the witnesses on behalf of defendants placing it as low as $50, the decided weight of the evidence tended to show that it was worth $1,500, some witnesses placing its value at as much as $3,000.

There was not sufficient evidence of a fraudulent combination on the part of the defendants to justify setting aside the sale, and unless the evidence shows that plaintiff was thrown off his guard and misled, as to its advertisement by the statements of Bagley to him, and by reason thereof had no reason to expect

that the property would be advertised unless he joined in a request to the trustee to sell, did not know of the sale and as a result the property was sold at an inadequate price, the judgment should be reversed.

Plaintiff testified as follows:

"*Q.* State to the court what occurred between you and Mr. Bunker, or any parties for him in regard to this foreclosure? *A.* Mr. Bagley came to my office to see me, and asked me about the foreclosure, and I told him I would have to see Mr. McKee; I didn't know whether it was necessary or not; and he came around again, and I told him I had not seen McKee, and he said he would see me again. He asked me if I would join in the foreclosure with him, and I told him yes, if it was necessary to foreclose. And that was the last I heard of it until I got a letter from the sheriff in reference to my proportion of the proceeds of the sale. Mr. Bagley represented one of the second notes; he wanted me to join in the foreclosure.

"*Q.* What did he say; did he ask you? *A.* Yes, sir; he asked me to join in the foreclosure of the notes, and I told him I would like to see Mr. McKee first; that I didn't know whether it was necessary to foreclose or not. When we separated on that occasion he promised to see me again; he came to see me, but I hadn't yet seen McKee. He promised to see me before he foreclosed; that was my understanding.

"*Q.* And that was the last you heard of it until you got a letter from the sheriff? *A.* Yes, sir." This was after the sale.

Bagley testified as a witness on behalf of defendants and stated that he went to see Orr about the notes. He then proceeded as follows: "I told him that I represented Mrs. Heath, and that unless the interest was paid or some satisfactory arrangement made on both notes I should foreclose. He said he

would see Mr. McKee about it. And the last time I went to see him about it I told him that I had done my share of the running to him and McKee, and that something had to be done, and that if something was not done *within ten days* I should foreclose the property on the note I held. I waited the ten days' limit I gave him. I did not tell him in that conversation that I would come back and see him, never. He didn't ask me to. I told him distinctly that I had done my share of the running about this thing, and that he or McKee should come to see me, or I should foreclose *in ten days' time*. That I had to do it. And I waited ten days; yes, sir. The trustee they had in the deed of trust refused to make the sale, and I got Sheriff Sitlington to do it."

It will thus be seen that the statements of Orr and Bagley are inconsistent and irreconcilable with each other. If Orr's statements are true, and the court must have believed they were, then no error was committed in setting the sale aside. When the evidence is conflicting, as it is in this case, this court will generally defer to the ruling and finding of the trial court, who has the opportunity of meeting the witnesses face to face, of hearing them testify, and observing their demeanor on the witness stand, and by reason thereof is better qualified to pass on the weight of the evidence than we are. Mrs. Heath was under no legal obligations to notify Orr personally of her intention to sell, or to consult him with respect of her intention to advertise the property for sale under the deed of trust (*Hardwicke v. Hamilton*, 121 Mo. 465), but when her agent Bagley chose to so do, and promised Orr to see him again after their conversation in which Orr said Bagley asked him to join in the foreclosure, before advertising the property for sale, his failure to do so was a fraud upon Orr. He had a right to rely upon

this promise if made, and it can not be said that it was his own fault or misfortune that he did not know that the property was advertised for sale, when he had no reason to anticipate such a course by Bagley.

It is evident that the plaintiff did not know that the property was advertised for sale, otherwise it is to be presumed that he would have attended it and bid on the property in order to protect his own interest, for it is very clear that he had no other source from which to realize the money on his note, the payors being insolvent.    His absence from the sale can be accounted for in no other way, and if it be true as stated by Bagley that he told Orr at their last interview, that he had done his share of the running about this thing, and that he or McKee should come to see him or he would foreclose in *ten days'* time, it is but reasonable that he would have been on the alert, to see that the property was not sold without his knowledge.

With these facts in view and the inadequate price which the property brought as compared with its actual value, we are unwilling to say that the court committed error in setting the sale aside, and accordingly affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.