CHARLES GREEN REAL ESTATE COMPANY, Appellant, v. ST. LOUIS MUTUAL HOUSE BUILDING COMPANY NO. 3 et al.

Division Two, May 22, 1906.

1. **EVIDENCE: Competency of Witness: Deed of Trust: Agreement With Deceased President of Corporation.** A member of the company which was the mortgagor in a deed of trust is not competent to testify, in a suit to set aside a foreclosure sale to a third party, to an oral agreement between him and the deceased president of the company which was the mortgagee, to the effect that the mortgage company, or the president himself on its behalf, would bid in the property at its sale under the deed of trust and hold it so that the mortgagor might redeem it.

2. **TRUSTEE'S SALE: Fairness.** The trustee must conduct the sale with absolute fairness, and according to the terms of the deed of trust, and for the best advantage of both the debtor and the owner of the debt alike.

3. ——: ——: **Cash.** Where the deed of trust provides that the property shall be sold for cash, nothing less than a substantial compliance with the agreement will suffice. But where the sale was free from fraud and collusion and no one was injured by reason of the failure of the purchaser to pay all the purchase money at the time or upon the day of sale, the fact that the trustee announced in advance that $500 would have to be paid by the bidder at the time the property was knocked off to him, and the bidder paid $500 then, and the balance ($6,500) several days later when the deed was made, does not make it a sale upon credit, but the sale was a substantial compliance with the deed of trust.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Blevins,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) The exclusion of Green's testimony was error. Clark v. Thias, 173 Mo. 628; 30 Am. and Eng. Ency. Law (2 Ed.), 1046. (2) The exclusion of Green's testimony injured plaintiff. Cole Co. v. Madden, 91 Mo. 585. (3) The arrangement made by the trustee with purchasers who had no interest in the proceedings save to speculate on a good bargain ought to cause a reversal of the judgment. Cassidy v. Wallace, 102 Mo. 581. (4) The sale ought not be upheld, but should be annulled because of the course pursued by the trustee in selling on credit. 2 Jones on Mortgages (6 Ed.), sec. 1868; Coler v. Barth, 24 Col. 31; Scott v. Lumber Co., 67 Cal. 71; Snyder v. Railroad, 131 Mo. 566; Mead v. McLaughlin, 42 Mo. 203. (5) Defendants Maginn and Labsap are not innocent purchasers. 14 Am. and Eng. Ency. Law (2 Ed.), 289. (6) The purchaser is charged with notice of every requirement contained in the mortgage as to terms of sale. 2 Jones on Mortages (6 Ed.), sec. 1868.

*F. A. Wislizenus, J. P. Maginn* and *S. Labsap* for respondents.

(1) Mere inadequacy of price, unaccompanied by fraud or unfair dealing, is not a sufficient ground for setting aside a sale under a mortgage or a deed of trust. Keith v. Browning, 139 Mo. 190; Hardwicke v. Hamilton, 121 Mo. 465; Phillips v. Stewart, 59 Mo. 491; Railroad v. Brown, 43 Mo. 294; Maloney v. Webb, 112 Mo. 575; Harlon v. Nation, 126 Mo. 97; Markwell v. Markwell, 157 Mo. 326. (2) Agreement by beneficiary to bid the land in at the trustee's sale and permit redemption in a few days thereafter, where no consideration for the agreement is mentioned in the petition, and none proved and no fraud is shown, is not sufficient ground to support a suit to set aside a sale under deed of trust. Parketon v. Schlueter, 145 Mo. 55. (3) Green's possible evidence as to his alleged conversations and oral agreements with Simmons, as former president of the House Building Company and managing head of the trustees in liquidation of said company, that such trustees, or Simmons himself, on their behalf, would bid in the property at the sale under the deed of trust, was properly excluded by the trial judge, Simmons being dead. Sec. 4652, R. S. 1899; Williams v. Edwards, 94 Mo. 452; Butts v. Phelps, 79 Mo. 302; Brim v. Fleming, 135 Mo. 606; Hollman v. Lange, 143 Mo. 106; McCormick H. M. Co. v. Heath, 65 Mo. App. 461; Aultmann v. Adams, 35 Mo. App. 503; Clark v. Thias, 173 Mo. 645; Banking House v. Rood, 132 Mo. 256; Robertson v. Reed, 38 Mo. App. 32; Baker v. Reed, 162 Mo. 355; Patton v. Fox, 169 Mo. 107; Davis v. Wood, 161 Mo. 29. (4) Green's testimony as to such alleged oral conversations and agreements was also properly excluded, because there was no evidence offered tending to show that Simmons had any authority on behalf of the trustees of the House Building Company to enter into any such alleged agreement to bid in the

property. The former directors were, under section 976, R. S. 1899, settling up the affairs of a dissolved corporation, under the resolution of its board of directors of November 30, 1900, the charter having expired by limitation prior thereto. 1 Greenleaf on Evidence, sec. 114; Williams v. Edwards, 94 Mo. 451. (5) Moreover, there was no evidence whatever tending to show any knowledge or notice, prior to their purchase of the property, on the part of Maginn or Labsap that such alleged oral agreements had been made between Simmons and Green. (6) The sale by the trustee was for cash; it is usual and proper to demand a sufficient deposit, and allow a reasonable time to the purchaser to complete payment. Davis v. Hess, 103 Mo. 31; 2 Jones on Mortgages (5 Ed.), sec. 1866; Jones v. Moore, 42 Mo. 421; Goode v. Comfort, 39 Mo. 326. (7) Plaintiff has shifted completely its theory, from those of the petitions filed, successively, by it in the lower court, and on which that court heard the evidence. There was no allegation of any misconduct whatever by the trustee or by the purchasers, at the sale; none of any failure of the trustee to comply, in making the sale, with the provisions of the deed of trust; there was no evidence offered at the trial of any alleged agreement of any kind between the trustee and the purchasers, Maginn and Labsap, all of whom were present at the time, and two of whom testified, to the effect that the trustee would sell to them on credit; nor is there any evidence in the record to that effect. Dunnigan v. Green, 165 Mo. 113; Huling v. Stone Co., 87 Mo. App. 349; Hall v. Goodnight, 138 Mo. 576; Minton v. Steele, 125 Mo. 181; Bray v. Seligman, 75 Mo. 31; Harper v. Morse, 114 Mo. 317.

BURGESS, P. J.—This is a suit in equity, the purpose of which is to have set aside a sale, under a deed of trust, of certain real estate in the city of St. Louis. Charles Green was the owner of the property. On the 3rd day of August, 1896, he and his wife executed a

deed of trust on said property to defendant Frederick A. Wislizenus, trustee, to secure the payment of a bond, therein described, for $12,083.96, with interest, for money borrowed by them from the defendant, the St. Louis Mutual House Building Co. No. 3, which deed of trust contained a provision directing a public sale of the property, by the trustee, to the highest bidder for cash, on twenty days' public notice by advertisement in a St. Louis newspaper, giving the time, place and terms of sale, in case of default in the payment of the principal or interest upon said bond, and upon such sale to execute a deed in fee simple to the property sold to the purchaser, the proceeds to be applied to the payment of costs and expenses, and then to the payment of the amount of the principal debt, with all interest in arrear, the remainder, if any, to be paid to said Green.

At said sale the trustee announced that he would require the purchaser to pay the sum of $500 at the time of the sale. Sigmund Labsap, who was the highest and best bidder, became the purchaser of the property for the sum of $8,025 cash, and the trustee executed a deed, dated May 24, 1901, conveying said property to said Labsap, which deed was acknowledged before a notary public on June 6, 1901, and recorded in the recorder's office in St. Louis on June 8, 1901.

The evidence showed that Sigmund Labsap and James P. Maginn bought the said property jointly for their own account solely. Labsap subsequently, on June 20, 1901, conveyed an undivided one-half interest to Maginn, and paid for it out of their own funds; Labsap having borrowed on his note, secured by deed of trust on the said property, from the St. Louis Union Trust Co., the sum of $6,500, and said Labsap and Maginn obtained possession of said property about December, 1902; made repairs costing $800; paid taxes due on it for years 1901 and 1902, rented it for $87.50 per month in April, 1903.

On July 8, 1901 (forty-six days after the sale),

plaintiff filed a petition in the St. Louis Circuit Court against St. Louis House Building Company, which except as to certain parties defendant is substantially identical with the first petition filed in the case at bar.

This action of July 8, 1901, was pending until April 10, 1902, on which date the plaintiff voluntarily dismissed the same. Mr. Simmons, a defendant therein, having died on September 16, 1901, after service of process on him, his executors, Amos M. Thayer and Edgar L. Taylor, appeared and answered, filing a general denial on December 2, 1901. The other defendants also filed general denials. It was the petition in this cause, and the entries as to process and pleadings therein which were first offered in evidence by plaintiff on April 18, 1903, when the second suit brought April 10, 1902, came on for trial.

On April 10, 1902, plaintiff brought the present action. In this first petition, plaintiff alleges that the conversation and agreements between Charles Green, on behalf of plaintiff, and Samuel Simmons, were to the effect that Simmons announced the liquidation of the Building Company and the calling in of its loans including the Green loan, but that Simmons individually agreed to procure for plaintiff a new loan for $10,000 on the security of the same property, which would fully pay off all owing on said bond and all taxes and assessments levied on said property to the Building Company; that Simmons on various pretexts delayed making said new loan from time to time, and finally announced, in 1901, his inability to make said loan, on account of the said company's liquidation and would be compelled to sell said real estate under the provisions of the said deed of trust; that Green claimed such a sale was a breach of the contract between Simmons (individually) and plaintiff, and threatened steps to prevent such sale; that Simmons then, to deceive plaintiff and Green, throw them off of their guard, and retain this property for himself, at an inadequate price, told

Green that he need not take any steps for the plaintiff's protection against the consequences of the sale, because he, Simmons, would see that said real estate would be purchased at said sale by the Building Company No. 3, holder of said bond, and that plaintiff would be permitted thereupon to file the bond provided for in section 4343, Revised Statutes 1899, and obtain a year's time for the purpose of redeeming from said sale by making a new loan and paying off in full the Building Company's demand; that Green relied on the promise of Simmons, and thereupon and pursuant to such arrangement the trustee Wislizenus advertised the property; the sale was had; Mr. Labsap was declared the purchaser; that Labsap, in bidding off the property, acted wholly under the instructions of Simmons; did not intend to become, and was not in fact, the actual purchaser; and Wislizenus, the trustee, did not intend to sell it to him; that Labsap paid no money, on said sale, as purchaser, and had no money to make such purchase; that about a week after the sale plaintiff ascertained for the first time that the said Simmons claimed to be the owner of said property; that Labsap was a mere nominal purchaser holding the title for the secret use of Simmons, or of the Building Company, and had paid nothing at said sale; that Labsap holds said title, for either Simmons himself or for said Building Company, plaintiff does not know which.

Plaintiff dismissed on March 30, 1903, as to the executors and devisees and legatees of Simmons.

The joint answer filed April 4, 1903, of defendants Maginn and Labsap, denied all the allegations of the petition, except as thereinafter admitted; set up the expiration of the corporate existence of the Building Company, prior to the suit, and named the defendants mentioned in the petition as surviving trustees of said corporation, winding up its affairs; stated their purchase of the property at the sale from Wislizenus, trustee; their payment, in cash, to him of the price; his

conveyance to Labsap, and the latter's conveyance to
Maginn of a one-half interest; they denied all knowl-
edge of the matters, conversations and agreements al-
leged in the petition as having occurred between plain-
tiff and Samuel Simmons, either as an individual or as
president, trustee, or agent of the Building Company;
averred that they were the highest bidders at the sale,
and purchased thereat for a valuable consideration, in
good faith, and without any notice whatever of any
equity or claim of any kind belonging to plaintiff grow-
ing out of any of the alleged agreements in the petition;
that on June 8, 1901, they paid to the collector of taxes
the taxes on said property, levied thereon, for state,
school and city taxes, for the years 1898, 1899 and 1900,
aggregating about $730, and also all the taxes for 1901
and 1902; they averred that by deed dated June 6, 1901,
duly recorded on June 8, 1901, Labsap, being the legal
owner of the property, conveyed to the St. Louis Trust
Company said property to secure his negotiable note
for $6,500, payable to Francis K. Ryan, and received
therefor $6,500 in cash from him; that neither said
Trust Company nor said Ryan had any knowledge or
notice of the matters alleged in plaintiff's petition as
grounds for setting aside said sale.  They  aver that
plaintiff has been guilty of laches in permitting a delay
of more than ten months before bringing its present ac-
tion.

On April 9, 1903, all the other defendants filed
their answer alleging the Building Company to have
been a Missouri business corporation, not a building
and loan association; that its charter expired by limi-
tation prior to November, 1900; that said defendants,
except Wislizenus, became trustees for winding up its
affairs.  They deny specifically all the allegations of
the petition as to the alleged promise by them, their
company or any one on their behalf, to make a loan to
plaintiff for any purpose; deny that Green or plaintiff
agreed with their company or them for such new loan,

and, in short, deny specifically all the allegations of the petition as to the agreements, conversations and conduct, in regard to the sale under the deed of trust, alleged to have occurred between plaintiff and the Building Company. They aver the purchase at the sale by Labsap, the payment by him of $500 of the purchase money and the receipts by them and credit of the balance thereof, as trustees of the Building Company, on the bond of Green; they deny that Labsap was a nominal purchaser; that at any time he held title for the use of the Building Company. They deny that the property was worth $24,000.

On April 18, 1903, the cause was tried and on the same day the court rendered a judgment, finding the issues in favor of the defendants, dismissing plaintiff's petition, and adjudging costs to the defendants.

The various conveyances referred to were offered in evidence. It was admitted that Samuel Simmons had been president of the Building Company from its organization to the date of its last meeting, and that he was now dead. The charter of the St. Louis Mutual House Building Company was put in evidence, dated February 22, 1873, to continue for twenty years; also an entry from that company's minutes of November 30, 1900, reciting the expiration by limitation of the company's charter and a resolution of the president and board of directors, organizing themselves as trustees, under the provision of section 976, Revised Statutes 1899, to wind up the affairs of said corporation.

Plaintiff offered Mr. Green as a witness, and questioned him as to any conversation with Mr. Simmons concerning the payment of the bond or the negotiations of a loan or any matter connected with the sale of the property under the deed of trust. All the defendants objected to any testimony by Mr. Green as to conversations or agreements alleged in the petition as having occurred between Mr. Green and Mr. Simmons, the latter being now dead, and further, that the rights of de-

fendants Maginn and Labsap as purchasers could not be affected even if Simmons were alive, unless the allegations in the petition should be proved connecting them with the defendant company or its trustees, as having bought the property for it or them.

The court sustained the objection.

The conversation, after the sale, between Mr. Green and Mr. Wislizenus, and the latter and Mr. Kinealy in the absence of Maginn and Labsap, was admitted by the court against their objection, on condition, however, that plaintiff should by future evidence connect them with it, in some way to bind them; which plaintiff failed in any way to do. Mr. Green testified that on the day of sale he met Mr. Wislizenus, who told him, "If you go on any other program than that Mr. Maginn is the purchaser of that property, you will go on a false presumption. Mr. Maginn is the purchaser of that property, and he paid $500 earnest money on it."

Plaintiff offered no other testimony than that of Mr Green in support of the allegations of the petition in respect to the agreements, as to new loan, and as to the Building Company buying in the property for plaintiff.

Plaintiff offered no testimony whatever tending to show any collusion between Messrs. Labsap and Maginn, or either of them, and the Building Company or its trustees or Simmons; or, that they were its agents, or had, either of them, bought in the property for said company; or that they had at any time any knowledge whatever of the allegations of the petition as to agreements and conversations prior to said sale, between Mr. Green and Simmons or the Building Company.

Mr. Green testified that the property was worth, at date of sale, $24,000. On cross-examination he testified that the house on the property, No. 2113 Pine street, would require $1,500 or $2,000 to put in shape for renting, on the date of sale; that for four or five years prior to the sale it had no tenant; that he valued the ground at $200 a foot, or $15,000; that the neighborhood

was tenanted by immoral people; that he had bought it in, or traded for it 25 years ago; was now neither residence nor business property; knew of no sale recently in the vicinity.

Ben Von Phul testified the ground was worth $175 to $200 a foot, in his opinion, and improvements from $4,000 to $5,000.

S. J. Fisher testified the property was worth between $15,000 and $17,000; he had sold it at auction in 1898 for $14,000.

On defendants' behalf Mr. Joseph Dormitzer testified to having been in the real estate business forty years, in St. Louis; knew this property for many years; was familiar with values in its vicinity; the property could only have been sold for speculative purposes and would not have been worth more than $10,000; was present at the sale, and bid $7,000, and wouldn't bid more; had bought and sold property and owned property in that neighborhood.

Henry L. Cornet, for defendants, testified that its fair market value, at date of sale, was about $150 a foot, and did not attach much importance to the improvements on that valuation of $11,250.

Defendant Maginn testified on behalf of defendant to the effect that Mr. Labsap had bought the property for himself and witness, each furnishing one-half of the purchase money; that the purchase was entirely a private venture of witness and Labsap, and that witness, except as purchaser, had, prior to the sale, no connection with the property; no claim or interest in it whatever; that he and Labsap had bought it hoping to realize some profit from the purchase; and on defendants' behalf he testified as to the expenditures made by him and Mr. Labsap, submitting a list of items under a notice from Mr. Kinealy to do so, which was offered in evidence, and showing over $10,500 actually expended for the property at time of trial.

Mr. Wislizenus testified, confirming Mr. Green's

statement of their conversation on the day of sale; and that at that time and subsequent thereto, he never knew or heard and never had any suggestion or understanding that the property was to be bid in by the trustees, or that there was any arrangement with Mr. Green of any sort whatsoever; that the defendants' trustees, except witness, have since November, 1900, been in charge of the company's affairs and have wound them up as statutory trustees; Mr. Simmons was, barring his days of sickness, there every day, attending to that business. Mr. Wislizenus was not a director of the St. Louis Mutual House Building Co. No. 3, nor was he one of the trustees, winding up the affairs of said corporation.

This was, in substance, all the evidence in the case.

The first assignment of error is with respect to the action of the court in holding that Charles Green was incompetent to testify as a witness to conversations and oral agreements with Mr. Simmons, former president of the House Building Company and managing head of the trustees in liquidation of said company, to the effect that such trustees or Mr. Simmons himself, on their behalf, would bid in the property at the sale under the deed of trust, he, Simmons, being dead at the time of the trial. The argument is that Simmons was merely the agent of the defendant House Building Company, and the death of Simmons did not render Green incompetent to testify as to his negotiations with Simmons concerning the loan. In support of this contention plaintiff relies upon the case of Clark v. Thias, 173 Mo. 628, and 30 Am. and Eng. Ency. Law (2 Ed.), 1046.

In Clark v. Thias, supra, the question was as to whether Martin, a witness who was acting as clerk or agent for Clark & Martin at the time the note in question was taken, was competent to testify in regard to transactions between himself and Mary Larkin in a suit by Clark against Thias, as administrator of Mary

Larkin, deceased, to set aside a deed to certain real estate conveyed by her to defraud her creditors. Martin, the witness, had no interest in the note, nor was he a party to the suit, and the court very properly held that he was competent to testify. [30 Am. and Eng. Ency. Law (2 Ed.), 1046.] But in the case at bar, witness Green, a member of the Charles Green Real Estate Company, the party plaintiff, was held incompetent to testify, and, we think, properly, to alleged conversations and oral agreements with Simmons, as former president of the House Building Company, defendant, and the managing head of the trustees in liquidation of said company. Simmons was the agent of the House Building Company, and he being dead, Green was not competent, under the circumstances, to testify to any conversations or negotiations had with Simmons concerning the loan. [Sec. 4652, R. S. 1899; Williams v. Edwards, 94 Mo. 447, and cases cited.]

It is contended by plaintiff that the evidence shows that the sale under the deed of trust was purely on credit, and was made in accordance with a secret previous arrangement with the trustee for the benefit of defendants Maginn and Labsap who had no interest in the debt or property. That, to pay the amount of their bid, they made a loan upon the property for $6,500 and paid the amount to the trustee on June 8, 1901, and the balance by Labsap's check for $1,025. That this was an unfair discrimination in favor of two speculators, arranged beforehand, and was a violation of the trustee's duty as set forth in the deed of trust, and should have caused the court to set aside the sale, especially when, by reason thereof, the property brought only about one-third of its value.

The trustee in the deed of trust was the agent of both the owners of the property and of the secured debt, and it was his duty to act without partiality towards either of them. He had no authority to do other than to sell the property to the best advantage of the

owner of the debt and the debtor, alike, and conduct the sale according to the terms of the deed of trust, and with absolute fairness. The deed of trust having provided that the property should be sold for cash, nothing less than a substantial compliance with that provision could suffice. [Coler v. Barth, 24 Colo. 31; 2 Jones on Mortgages (6 Ed.), sec. 1868; Scott v. Sierra L. Co., 67 Cal. 71.]

It was announced by the trustee at the time of the sale that the purchaser would be required to pay the sum of $500 upon bidding off the property described in the deed of trust. This was done, and on June 8, 1901, the balance of the purchase price was paid, and on the same day the trustee executed and delivered to Sigmund Labsap a deed to the property.

There was no evidence tending to show collusion between Labsap and Maginn, or between either of them and the Building Company or its trustees, or Simmons, or that they were the agents of and purchased the property for said company, or that they had at the time of the sale any knowledge as to any agreements or conversations, prior to said sale, between Green and Simmons or the Building Company. Nor was there any evidence tending to prove that the property would have brought more money at the sale but for the announcement of the trustees that $500 would have to be paid by the bidder at the time the property was knocked off to him.

In Goode v. Comfort, 39 Mo. 313, it is held that the deed of trust under which the sale of the property in question was made empowered the trustees to sell for cash, but that they had no authority to superadd any terms which a proper construction of the instrument did not reasonably imply; that sales by trustees had been likened to sales by a master of chancery, and the rule was always to allow the purchaser a reasonable time—a fair opportunity to examine his deed, and to submit it to the inspection of his counsel before he was

forced to part with his money. Further on in the opinion it is said: "Without it can be shown that the announcement had the actual effect of keeping persons present from bidding, we are inclined to the opinion that it would not furnish sufficient warrant for setting aside the sale and holding it invalid on that account. Had persons been present who desired to bid, and been prevented or deterred in consequence of this course, it would present a different case."

In Markey v. Langley, 92 U. S. 142, it is said: "If the power require the sale to be made for cash, and it is made for part cash and part credit, the departure from the power is beneficial to the mortgagor, and the sale is valid." [Hubbard v. Jarrell, 23 Md. 75.] Further on in the same decison there is quoted, with approval, from the case of Mahone v. Williams, 39 Ala. (N. S.) 202, the following: "In determining upon the approval or rejection of the sale in such cases, the true question to be considered is, not so much whether there has been a literal or technical, as a fair and reasonable, compliance with the terms of sale, and a bona-fide disposition of the property."

The sale under consideration seems to have been a substantial compliance with the deed of trust, and free from fraud, and the fact that the purchasers did not pay all of the purchase money for several days after the sale did not make it a sale upon credit. No one was injured by reason of the failure to pay all the purchase money at the time or upon the day of sale, and the sale should not be set aside because of such failure.

It has been many times held by this court that inadequacy of price, in the absence of fraud or unfair dealing, is not a sufficient ground for setting aside a sale under a mortgage or deed of trust, and there is nothing disclosed by the record in this case to take it out of the general run of cases to which this rule is applicable. [Keith v. Browning, 139 Mo. 190; Hardwicke v. Hamilton, 121 Mo. 465; Phillips v. Stewart, 59 Mo.

491; Maloney v. Webb, 112 Mo. 575; Harlin v. Nation, 126 Mo. 97; Markwell v. Markwell, 157 Mo. 326.]

Our conclusion is that the judgment should be affirmed. It is so ordered.

All concur.