Ruffin, C. J.
 

 The remaining exceptions of Morrison, and others administrators of Person, and the 5th and 7th, on the part of M’Leod, relate to so much of the account, as respects the rents and profits of the land received by Person an d his representatives, and the improvements and waste of the premises; and they may be considered together. Person entered into possession in Mayor June, 1827, and the' lands have been occupied by him and his representatives ever since. For the part of the year 1827, and for the year 1828> the master has fixed the rent at the rate of $>56, and for every succeeding year to 1841, inclusive, at §166 per annum. The waste is estimated at §337, and the improvements at §177; and deducting the latter from the former sum, the master credits M’Leod, on the 1st day of January, 1842, with the difference, to wit, §160. A number of witnesses were examined on each side, who made estimates of the crops made.on the land, and their value, and gave their opinions as to reasonable rents before and after the improvements, and of the value of the improvements, and amount of waste; and the master arrived at his conclusions on these points chiefly by making an average of the estimates of the witnesses. M’Leod excepts because sufficient rents have not been allowed him. The other side excepts, because the principle on which the master proceeded is wrong, and he ought to have been governed by the testimony that was most satisfactory to his own understanding; and also to the allowance for waste, and to the amount of the rents, which, it
 
 *110
 
 is insisted should be according ito the value at the time Per-entered into possession, or, at all events, according to what was made from the land.
 

 imProvements consist, in part, of small repairs done to the dwelling and outhouses, and building a crib and stable; aq ,jone with wooden poles, and so much decayed during the occupation by and under Person, as to be of little value now. The residue consisted in clearing about forty acres of fertile bottom land on ,a creek, and bringing it into cultivation, and in clearing up, and renewing the fencing on the plantation left by M’Leod, which comprised 60 or 70 acres, of which about 25 or 30 were then in cultivation. The low grounds added greatly to the productiveness of the plantation, and indeed yielded the principal parts of the crops; but by continued cultivation and the ravages of freshets in the creek, that part of the land has been much exhausted and washed. Pending the present suit the plantation has become out of repair; and the average estimate of the witnesses is, that it would require the above sum of $337 to put it into good repair. But they all at the same time state, that the houses, fences and plantation are in better repair, and would bring a better rent now than in 1827, when Person entered.
 

 The master’s mode of taking an average cannot be said, we think, to be wrong in every .case, as was argued; although it may not be right in every case. It is not liable to the objection urged against it of being within the principle, on which verdicts have been set aside, where each juror fixed a sum, and the aggregate was divided by their number and the quotient taken for the damages. For it is the duty of each juror to assess such damages as the evidence demands of his conscience and understanding, and neither more nor less,except so far as his mind may be influenced by the reasoning of his fellows. That, however, is very different from the considerations, whieh may justly influence a jury or master in weighing evidence. For suppose any number of witnesses, with equal intelligence and integrity and equal opportunities of knowing or judging (as far as can be discov-erred) to appear before a jury to depose to the value of a
 
 *111
 
 thing, or to the amount of damages, and to give different estimates: how can a decision be made but by splitting the differences between them? When there is an equal probability that the one is as much too low as the other is too high, is it not safe and reasonable to take the middle point between them? As much fault, we think, cannot be found with the principle as with the improper application of it. For it is never to be acted on, unless there be quite an equality of credit to be given to each witness in every respect. If there be any means of discriminating between them, then the actual weight of the evidence of each is to govern In this case, we suppose the master did not perceive any ground of discrimination between the witnesses,, and therefore, he took the mean of all their estimates. But as we think, after a perusal of the depositions, that there are differences between the weight to which the witnesses are entitled, and, that the profits may, tho? not very satisfactorily, be ascertained with probable correctness, without striking the average of which we have been speaking, we cannot follow the master in that respect.
 

 It may be well in the first place to dispose of the item for waste. One of the objections taken to that is, that the master has charged for permissive waste in letting the wooden houses and fences decay; for which, it is said, a mortgagee is not liable. Whatever may be the rule when a mortgagee enters into possession by receipt of the rents of premises occupied by tenants, we conceive that when he enters by taking the actual possession and occupies himself, he makes himself tenant of the land and subjects himself to the highest fair rent, and becomes responsible for all such acts or omissions as would, under the usual leases, constitute claims on an ordinary tenant. But in this case, the evidence is, that in truth the plantation is in better repair than when Person took possession, and therefore the claim for waste is to that extent altogether unfounded. Then with respect to the deterioration of the land by draining and working it, and by washing, there can be no doubt that the mortgagor is entitled to a just compensation. For the mortgagee has no power to make such improvements, as he may choose to call
 
 *112
 
 them; and he cannot claim to be reimbursed by the other party for their value at the time of redemption. JBut, on the other hand, the mortgagor cannot claim compensation for such deterioration and also an improved rent in consequence of the opening new and more fertile land; for the deterioration arises in the process of earning the rents. Here the mortgagor claims rent; and it is obviously his interest to do so; inasmuch as it arises annually, and, spreading^ itself through the whole period, prevents the accumulation of interest on the mortgage debt, and gradually extinguishes the debt; while the waste would be computed at the end of the term only, and without interest. In our opinion, a mortgagee, who personally occupies the premises, exposes himself to the election of the mortgagor to have the account taken either way, as may be most to the advantage of the latter. If the premises are out on lease, it is but a small matter for the mortgagee to require the tenants to pay their rents to him; for the mortgagor’s money is merely applied to his debt and no actual injury is done to him, tho’ he may beincommoded in his income. But when the mortgagee, instead of foreclosing, turns the mortgagor out at law and occupies himself, without any agreement for rent, and, without any understanding with the mortgagor, cuts down timber, clears and wears out the land, the Court is obliged to see that such conduct tends to the oppression of the mortgagor, and that mortgagees would be constantly tempted thus to act, unless they were held to account strictly for all the profits they realized from the occupation of the land. It is this view of the case which satisfies the Court that Person is liable for an improved rent, during his occupation, to be computed from the time he was compensated, by the use of the land cleared, for clearing it. But, as has been before observed, McLeod cannot have that rent, and also damages for the injury to the land by impoverishing it, in the shape of waste. Therefore, the whole sum of $160, which is credited for waste, must be struck out.
 

 Per Curiam, Referred again to the master, with instructions according to the opinion of the Court.