H. T. RICH and Wife v. J. K. MORISEY, Executor, et al.

(Filed 5 November, 1908).

Defendants' Appeal.

1. **Issues—Questions of Fact—Equity Jurisprudence—Facts Established.**

While issuable facts, as distinguished from those which are evidentiary, must ordinarily be found by a jury, when the equity jurisdiction of the Court has been invoked, the Court will not grant a new trial when it appears that all of the essential facts upon which the rights of the parties depend are established by the pleadings or have been found by the jury.

2. **Suits—Forma Pauperis—Application Denied, Afterwards Granted.**

An exception to the refusal of the trial Judge to dismiss an action, brought in forma pauperis, for that theretofore another action for the same cause had been dismissed by another Judge, under Revisal, 451, and no appeal taken, cannot be sustained.

3. **Mortgagor and Mortgagee—Executors and Administrators—Purchaser at His Own Sale—Estoppel of Devisee and Heir—Ratification—Questions for Jury.**

A mortgaged land to B, who, upon A's death, qualified as his administrator. B sold the land pursuant to the power contained in the mortgage and procured C to buy it. C executed a deed to B, who charged himself, in his final account, as administrator, with the amount of the bid made by C. B devised to D, the heir of A, a portion of the land, who, during infancy and while under coverture, entered upon the land devised to her. Thereafter she brought this action, treating the sale under the mortgage as void and offered to redeem. *Held,* (1) That the sale was voidable at the election of the heir of A. (2) That taking possession of the land devised to D did not, as a matter of law, make an election, estopping her from the enforcement of her legal or equitable rights. (3) Whether her conduct amounted to a ratification was, in the light of the evidence, a question for the jury. His Honor's instructions upon the issue approved.

4. **Limitations of Actions—Issues—Assignment of Error.**

When no issue as to the statute of limitations was tendered or requested in apt time, it cannot be assigned as error, after verdict, that no such issue was submitted.

CIVIL ACTION tried before *W. R. Allen, J.;* and a jury, December Special Term, 1907, of SAMPSON.

The facts disclosed by the pleadings and verdict of the jury are: O. B. Morisey, the ancestor of *feme* plaintiff, being the owner of the tract of land in controversy, containing 140 acres, on 3 December, 1874, executed a mortgage thereon to D. G. Morisey to secure the payment of a note for $627. During the year 1883 said O. B. Morisey died intestate, leaving the *feme* plaintiff, an infant, his only heir at law. D. G. Morisey duly qualified as his administrator and sold the personalty for the sum of $151, of which he made due return to the Clerk of the Superior Court. During the month of February, 1884, said D. G. Morisey, pursuant to the power of sale in said mortgage, sold the land at public auction, for $1,500. At the sale, one A. F. Johnson bid in the land, but no deed from said Morisey to Johnson appears of record. He bought for, and at the request of, said D. G. Morisey and paid no money on account of his bid. A. F. Johnson conveyed to D. G. Morisey, who went into possession of said land and remained therein until his death, during the year 1901. On 19 March, 1901, said D. G. Morisey, as administrator of O. B. Morisey, filed in the Clerk's office his final account, wherein he charged himself with the sum of $151, proceeds sale of the personalty, and $1,500, proceeds sale of the land. He credited himself with the mortgage debt and the sum of $614.97, "amount retained on account." The debit and credit items, including interest and expenses of administration, left in his hands $12.11, which he retained as commissions. The account was duly verified before the Clerk. The *feme* plaintiff was married to her co-plaintiff 3 November, 1898, before arriving at full age. D. G. Morisey died on the.. day of...., 1901, having first made and published his last will and testament appointing defendant James K. Morisey executor thereto. In his said will, D. G. Morisey devised to *feme* plaintiff, Penny O. Rich, the portion of the land in controversy, upon which her father lived, containing 50 acres, and fifty dollars in money. The remaining ninety (90)

acres of land were devised to his nieces, the defendants Walker Morisey and Annie Hubbard. The will was read to all the devisees including the plaintiffs. In a short time thereafter, 1 January, 1902, the fifty acres devised to *feme* plaintiff was surveyed by direction of the executor and with the assent of plaintiff, and she, with her husband, took possession thereof, and has remained in possession thereof to the time of the trial. The devisees other than plaintiff sold and conveyed the land so devised to them, subsequent to October, 1905, to defendant John B. Moore for full value. Upon issues submitted to them, the jury find that defendant Moore was a purchaser for value and without notice of any debt due by D. G. Morisey; that he was not a purchaser without notice of plaintiff's "claims"; that the value of the land, at the time of the sale under the mortgage, was $1,500; that plaintiffs have not ratified and affirmed the mortgage sale; that the value of the personal estate of said O. B. Morisey was as shown by the record ($151); that the annual rental value of the land, from the time D. G. Morisey took possession until his death, was $125; that the annual rental value, after cutting off the fifty acres devised to *feme* plaintiff, is $50. His Honor, upon the foregoing findings, directed the jury to answer the issue, in regard to the right of plaintiffs to redeem, in the affirmative. A number of exceptions were lodged by plaintiffs and defendants to the issues submitted, and to the refusal to submit others tendered. No issues were tendered regarding the statute of limitations. Upon the verdict plaintiffs and defendants tendered judgments, each of which his Honor declined to sign. He signed the judgment set out in the record, reciting the verdict upon the issues and such other facts as were not controverted, which are hereinbefore set out. He thereupon rendered the following judgment:

1. That the plaintiff is entitled to redeem said land.

2. That the final account of said administrator, until impeached, is *prima facie* correct.

RICH v. MORISEY.

3. That said land being charged in said final account at the sum of $1,500, and the same being used in the payment of debts of the said O. B. Morisey, and to that extent having exonerated the interest of the plaintiff in the lands in controversy from the payment of debts, the plaintiff upon the statement of the account between her and the defendants, is chargeable with said sum of $1,500 as of 27 February, 1884, and that the rents and profits as found by the jury should be applied thereto. It is thereupon considered and adjudged that the defendant J. B. Moore holds the title to said land in trust for the plaintiff Penny O. Rich, and, upon the payment of the sum of $164.13, the balance after applying the rents to said sum of $1,500 by the said Penny O. Rich, with interest from 9 December, 1907, that he convey the same to her in fee.

It is further considered and adjudged, that upon failure of the said Penny O. Rich to pay said sum of $164.13, with interest from 9 December, 1907, within ninety days, the Clerk of the Superior Court of Sampson County, W. F. Sessoms, who is now appointed a commissioner for that purpose, sell said land at public outcry, at the court-house door in Clinton, after due advertisement, for the payment of said sum, and that he report his proceedings to this Court.

It is further considered and adjudged that the plaintiffs recover of the defendants their costs.

Both parties excepted and appealed.

J. D. Kerr for plaintiffs.

Faison & Wright, H. A. Grady and F. R. Cooper for defendants.

DEFENDANTS' APPEAL.

CONNOR, J., after stating the case: Before proceeding to discuss the exceptions directed to the merits of the case, it is proper to say that, in our opinion, the issues submitted by

his Honor present every phase of the controversy proper to be passed upon by the jury. While it is true that, in regard to some of the issues, there are no specific allegations in the pleadings, yet it is obvious that no decree adjusting the rights of the parties could have been rendered until the Court was informed, either by the findings of the jury, or upon the report of a Referee, in regard to the matters involved in such issues. Under the system of procedure which prevailed with us prior to the adoption of the Code, the plaintiffs would have sought relief by a bill in equity. While it is true that every issuable controverted fact, as distinguished from mere evidentiary facts, must be found by the jury upon appropriate issues, it is equally true, to a large extent, that the form of the issues is within the sound judicial discretion of the Court. *Emry v. R. R.,* 102 N. C., 209; *Springer v. Shavender,* 116 N. C., 12; *Paper Co. v. Chronicle Co.,* 115 N. C., 676.

When it is manifest that all of the essential facts, upon which the rights of the parties depend, appear upon the pleadings or have been found by the jury, this Court will not, upon a mere question of form, set aside the judgment and subject the parties to a new trial involving delay and expense. In questions of procedure, errors, if found to exist, must appear to be prejudicial to appellant to entitle him to a new trial. It is evident that his Honor grasped the scope of the litigation and has, by the verdict of the jury, together with the admissions in the pleadings, rendered a decree which puts an end to the litigation in regard to matters and transactions which occurred twenty-four years ago. Two nonsuits have been taken. Delays have been had during which transactions and the character of men who have passed away are attacked. A purchaser for full value from the devisees of D. G. Morisey, more than two years after his death and after the present plaintiffs by acquiesence and acceptance of a devise of a portion of the same land, and after two judgments of non-

suit had been rendered, finds his title brought into litigation.

It will be convenient to discuss the defendant's appeal first. It appears that plaintiffs instituted an action in *forma pauperis* based upon the same allegations and asking the same relief to the Spring Term, 1902, of the Superior Court of Sampson. Defendants, upon affidavit, moved to "dispauper" them, whereupon they submitted to a judgment of nonsuit at October Term, 1902. They brought a second action within a year and, at October Term, 1905, upon the motion of defendants for the same reason the Court dismissed the action, from which no appeal was taken. On 6 July, 1906, they brought this action in *forma pauperis*. Defendants moved, before Judge Jones, to dismiss for that it appeared that the *feme* plaintiff owned fifty acres of land worth more than $200; that the second action was brought more than a year after the first nonsuit; that plaintiffs were estopped by the order dismissing the action, at October Term, 1905, by which they were "dispaupered." Upon this motion, Judge Jones found that plaintiffs were not able to give a prosecution bond and refused to dismiss. They rely upon section 451, Revisal. This section permits a party to sue in *forma pauperis* by showing to the judge or clerk that he has a good cause of action and makes affidavit that he is unable to give the bond or make the deposit required by section 450. It differs from section 454, which requires the defendant, before answering without filing defense bond, to make affidavit "that he is not worth the amount of said undertaking, in any property whatsoever, and is unable to give the bond." While the dismissal of the action by one judge does not estop plaintiff from bringing a second action, the fact of such dismissal should be considered by the clerk or judge and given due weight when the party makes the second application. To permit repeated actions to be brought, under section 451, to the annoyance and expense of parties, hindering them in the enjoyment and sale of property, would be an abuse of a privilege which the

law confers upon poor persons acting in good faith. It is very easy to obtain the certificate of counsel who hear but one side of the case, in the not unnatural coloring of the party desiring to sue. The exception to the refusal of Judge Jones to dismiss the action cannot be sustained. The action of the Judge who dismissed at a former term was not a judgment upon the merits and therefore was not *res judicata* in respect to a second application to sue.

The defendants except to the refusal of his Honor to submit an issue, tendered by them, enquiring whether *feme* plaintiff accepted the fifty acres of land and went into possession thereof under the will of D. G. Morisey, before the commencement of this action. The defendants insist that if this issue was answered affirmatively, the *feme* plaintiff would be thereby estopped; that she would not be permitted to take the fifty acres under the will and claim the right to redeem the entire tract, as heir of her father. His Honor submitted an issue pointed to the question of ratification of the attempted sale under the mortgage, which covers the contention of defendants. He instructed the jury that the only evidence of a ratification was that of her conduct, in respect to the fifty acres. That to constitute a ratification, the acts relied upon must have been done with a knowledge of the facts—that is, of the attempted sale, etc. He further instructed them, that if she knew of the mortgage and the sale thereunder and that D. G. Morisey had given her the fifty acres of land in his will, and with a knowledge of these facts she entered upon and accepted the land under said will, this contract, on her part, would be a ratification. To this instruction defendants excepted. The issue presented and, in the light of the instruction, the jury passed upon the question of her acceptance of the devise. We think the instruction correct.

We do not find in the testimony sent up any evidence that the *feme* plaintiff had any knowledge or information respect-

ing the sale by D. G. Morisey and the conveyance to him by Johnson. She was a small child when her father died and when the sale took place. It may well be that she knew that her uncle had a mortgage on the land and that he had taken possession of it. However this may be, the question was left to the jury in as favorable light as defendants were entitled to, and they have found for her. His Honor could not, as a matter of law, have held that she had elected and ratified a void or voidable sale, thereby foreclosing her right to redeem.

It is suggested that she was put to her election to accept the fifty acres and thereby surrender her right to redeem the entire tract, or to reject the devise and assert her claim. The equitable doctrine of election between inconsistent benefits is well settled by numerous decisions of this Court and all works on equity jurisprudence. It applies when a testator attempts to devise the property of A to B and, at the same time, gives his own property to A. If both the elements do not combine, the doctrine is not invoked or, as it is said, there is no case for an election. Bispham Eq., 298. It is very doubtful whether the facts before us present a case in which the plaintiff, if *sui juris*, is put to her election. Morisey owned as mortgagee the entire tract and plaintiff, as heir of her father, was entitled to redeem. The devisor held the legal title to the whole and the plaintiff had the equity of redemption in the same property. These facts do not bring the case within the doctrine. Again, the plaintiff was a *feme covert*, and before being put to her election was entitled to have a full disclosure of the value of the property and of her right to redemption, to the end that she might have a full opportunity to exercise her election, if required to make one before suing, and to act advisedly. The general rule is, that "to estop a married woman from alleging a claim to land, there must be some positive act of fraud, or something done upon which a person dealing with her, or in a matter affect-

ing her rights, might reasonably rely, and upon which he did rely and was thereby injured." *Towles v. Fisher,* 77 N. C., 437; *Weathersby v. Farrar,* 97 N. C., 106; *Wells v. Batts,* 112 N. C., 283. It was certainly not fraudulent as against the other devisees for plaintiff to enter upon the fifty acres. They had, so far as the record shows, the same knowledge regarding the condition of the title as she did. They took under the will of D. G. Morisey and are not purchasers for value. It cannot be seen how they were misled or parted with anything of value, or surrendered any right, by reason of her conduct. In regard to defendant John B. Moore, he purchased after the nonsuit. This should have put him upon inquiry as to her claim, and the jury find that he was not a · purchaser for value without notice thereof. The exception of defendants to his Honor's ruling, in this respect, cannot be sustained.

The defendants except to his Honor's refusal ·to permit them to show that O. B. Morisey was insolvent at the time of his death. We see no error in this. It was not relevant to, and could not affect the verdict upon any issue, besides, with the final account of the administrator in evidence, unimpeached, insolvency was clearly shown.

Exception is taken because his Honor failed to submit any issue upon the statute of limitations. It is sufficient to say that, as no such issue was tendered, and the Court not requested to submit one, it is too late after verdict to assign the failure to do so as error. Clark's Code, sec. 395, where the cases are collected sustaining his Honor. No statute is pleaded except by defendant John B. Moore, who relies upon the statute protecting a purchaser from the heir or devisee, two years after the death of the ancestor or devisor, without notice of the indebtedness. This statute has no application here. The plaintiff is not seeking to enforce the collection of a debt from the executor of Morisey. The jury find that

defendant Moore had no notice of any debt against Morisey, hence that question, in any point of view, is eliminated.

His Honor, upon the finding of the jury and the pleadings, held that the *feme* plaintiff was entitled to redeem and so instructed the jury, or so answered the issue himself. Defendants excepted. It is well settled, both upon principle and uniform authority, with us, that a mortgagee cannot foreclose the equity of redemption by a sale of the property under the power and a purchase by himself. Such sale and attempted purchase is void or voidable at the election of the mortgagor. The mortgagee, in respect to the exercise of the power of sale, is a trustee, and the well settled rule which prohibits a trustee from purchasing the property conveyed to, or held by him in trust, from acquiring title as against the *cestui que trust,* has been uniformly applied. In *Fronerberger v. Lewis,* 79 N. C., 426, Judge Bynum reviews the decision of this Court, showing that they are uniform in this respect. In *Jones v. Pullen,* 115 N. C., 465, *Shepherd, C. J.,* says: "There is no question, according to our authorities, that if a mortgagee with power to sell indirectly purchases at his own sale, the mortgagor may elect to avoid the sale, and this without reference to its having been fairly made, and for a reasonable price. This is an inflexible rule, and it is not because there is, but because there may be, fraud." His Honor's ruling, in this respect, is in conformity with the uniform decisions of this Court and the well settled principles of equity. We reserve the exception to the refusal of his Honor to sign the judgment tendered by defendants until we have examined them and have disposed of the exceptions lodged by plaintiffs.

PLAINTIFFS' APPEAL.

1. **Mortgagor and Mortgagee—Voidable Sale—Executors and Administrators—Heirs—Land Chargeable with Debts of Deceased —Accounting.**

When the heir of the mortgagor asks the Court to set aside a voidable sale and permit her to redeem, she is correctly charged, upon an accounting, with the debts of her ancestor, the mortgagee, for which the land, in her hands could have been subjected. The principle upon which the accounting was had in this case is approved. The statute of limitations was not involved.

3. **Executors and Administrators—Evidence—Final Account—Prima Facie Correct.**

In a suit involving the transactions of an administrator, his verified final account, examined, endorsed and filed by the Clerk is *prima facie* evidence of its correctness.

4. **Mortgagor and Mortgage — Sale under Mortgage Set Aside— Heir—Purchase Price.**

In setting aside a deed to the mortgagee of lands indirectly purchased by him at his own sale, under a power in the mortgage, the Court will require the heir claiming under the mortgagor to account for the purchase price, which has been applied to the payment of her ancestor's debts.

CONNOR, J. The plaintiff introduced the final account of D. G. Morisey, administrator of O. B. Morisey, deceased, filed 19 March, 1901, by which it appears that he charged himself with proceeds of sale of personalty $150, and proceeds of sale of land $1,500. He credits himself with the mortgage debt and "amount retained on account" $614.97, Clerk's fees and amount paid attorneys $20, leaving a balance of $12.11 which he retains as commissions. No evidence was introduced tending to impeach the account. His Honor, having adjudged that the *feme* plaintiff was entitled to redeem, may have ordered a reference to ascertain the status of the account between D. G. Morisey's estate and plaintiff, or, as he did, ascertain the facts from the pleadings and issues or questions submitted to the jury. The principle upon which the adjustment of the account was to be stated was correctly adopted by his Honor. Plaintiff was required

to pay the indebtedness of her father for which the land was liable, subject to a reduction of the rents and profits, for which the mortgagee in possession was liable.

Plaintiffs have filed a large number of assignments of error. Many of them are technical and do not affect the merits of the case or the rights of the parties. The amount of the mortgage debt is fixed, and the jury have fixed the amount of the annual rents to the time of D. G. Morisey's death and subsequent thereto. To this extent there is no complication.

It is true that a mortgagee has no right to tack an unsecured debt to the mortgage debt and demand payment of both as a condition to redemption. In this case, upon the death of O. B. Morisey, his heir has a right to redeem by paying the mortgage debt. Immediately upon his doing so, the land was liable to be sold by the administrator to make assets to pay any other indebtedness subject, of course, to the widow's dower and the homestead rights of the infant children. These are eliminated because the widow is dead and the plaintiff is now of full age. While the *feme* plaintiff elects to repudiate the sale and claims the right to redeem the land, she must do equity by paying such debts as her ancestor would have been bound for, to which the land could have been subjected.

His Honor correctly held that, in the absence of any impeachment, the duly verified final account of D. G. Morisey, administrator, was to be treated as correct. In *Allen v. Royster,* 107 N. C., 278 (p. 283), *Davis, J.,* says: "The statute makes such account, thus examined, endorsed and filed in the office of the Clerk of the Court, *prima facie* evidence of its correctness." It shifts the burden of proof, as to the correctness of what it contained, to him who alleged the contrary. In *Collins v. Smith,* 109 N. C., 468, the same Justice says: "There is no allegation of any fraud or mistake in the final account so audited, nor is it attacked in any way

by plaintiff and it is, at least, *prima facie* correct." *Coggins v. Flythe,* 113 N. C., 103. This being so, his Honor adopted the amount charged by the administrator as proceeds of the land, which was found by the jury to be its full value. He credits him with the mortgage debt and the account which he held against his brother, O. B. Morisey. Unless this course is pursued the plaintiff will recover the land free from the amount due by account, and, in addition, the rents and profits from 1884 to 1901 at $125 annually, and since 1901 to the present at $50, she having received the rents from the 50 acres devised to her. Upon this recovery, the executor, J. K. Morisey, would be entitled to bring suit on the account and, upon recovering judgment, have the land subjected to the payment thereof. In that suit the plaintiff, or the personal representative of O. B. Morisey, would be entitled to have rents of the land credited on the account, all of which would, after long and expensive litigation, bring the parties to the same result reached by his Honor. We do not find any evidence of actual fraud on the part of D. G. Morisey. He paid off a debt which was a lien on his brother's land in 1874 and indulged him until his death, 1883. In the meantime, he credits his brother on account to the amount of $614. He buys the land at its full value and at his death gives to his brother's only child evidently the most valuable part of it, and a small pecuniary legacy. The plaintiff could not be permitted to plead the statute of limitations against the account. *Costen v. McDowell,* 107 N. C., 546. The plaintiff asks the equitable aid of the Court and is given the land with rents for twenty-eight years. The loss falls upon innocent persons who have purchased the land for full value. She is required to pay the honest debts of her father, etc. To decree her the land and rents without this condition would be inequitable and unjust. This Court has uniformly held that while it will, in such cases, set aside the sale, it will require the party, in whose behalf the equity is enforced,

149—4

to account for the purchase money, at least to the extent that the land has been exonerated from the claims upon it. *Card v. Finch,* 142 N. C., 140. In *Scott v. Dunn,* 21 N. C., 425, the executor, under a mistake in regard to his power, sold the land of his testator; the sale was set aside at the suit of the devisee. The purchase money had been applied to the payment of debts of the testator. It was held that the purchaser was subrogated to the rights of the creditor and the amount paid on the debts must be accounted for. *Gaston, J.,* after declaring the equity, says: "As all parties are before the Court, complete justice may be done by deciding direct relief to the plaintiff. . . . The doctrine of substitution, which prevails in equity, is not founded on contract but, as we have seen, on the principles of natural justice. Unquestionably the devisees are not to be injured by the mistake of the executor, as to the extent of his power over the land; but that mistake should not give them unfair gains. The executor was not an officious intermeddler in paying off the debts of his testator; and his erroneous belief that he could indemnify himself in a particular way, should not bar him from obtaining indemnity by legitimate means. It is not a question here, whether a mistake of law shall confer any rights, but whether such mistake shall be visited with a forfeiture of rights, wholly independent of that mitsake." *Perry v. Adams,* 98 N. C., 167.

His Honor, having all the parties before him, has adjusted their rights upon fair equitable principles all in conformity to the decisions of this Court. We are also of the opinion that the principle upon which the rents were applied is correct. After a careful examination of the record in both appeals, we find no error in the judgment. The *feme* plaintiff gets a tract of land upon the payment of $164, upon which her father permitted a mortgage for $627 to stand for ten years, paying no interest and contracting an account for $614. We do not find any evidence of actual fraud on the part of

D. G. Moriesy. By his mistake as to his right to buy the land he has discharged it practically from indebtedness, and his niece, to whom he gave fifty acres, "comes to her own," while the defendant Moore sustains the loss. Neither party will recover amount paid for printing. The judgment in both appeals must be

Affirmed.