TOBE McLAWHORN et al. v. WILLIAM HARRIS and Wife,
·\BETTIE.

(Filed 4 October, 1911.)

1. **Jurors—Deputy Sheriffs—Discretion of Court—Appeal and Error.**
    It is within the discretion of the trial judge to excuse as a
    juror a deputy sheriff who, during the term of court, has sum-
    moned and mingled with the other jurors and has had charge of
    them, and not reviewable on appeal. While there is no statute·
    forbidding it, such juror should not be permitted to serve.

2. **Deeds and Conveyances—Parol Trusts—Conflicting Evidence—
    Questions for Jury.**
    When there is sufficient but conflicting evidence as to an ex-
    press parol trust engrafted upon a purchase of land, the ques-
    tion is one for the jury, under proper instructions from the
    court.

3. **Deeds and Conveyances—Trusts and Trustees—Sales—Mortgage
    —Purchaser.**
    Under a fair and open sale of lands made by the trustee
    according to the terms of a deed in trust securing a bond for
    money loaned, the owner of the bond may bid in the lands and
    become the purchaser in his own right.

4. **Tenants in Common—Unity of Possession—Tenant a Purchaser
    —Interests Acquired.**
    Destroying the unity of possession of cotenants in common
    will dissolve the tenancy, and · thereafter a former tenant in
    common may acquire the entire property.

5. **Deeds and Conveyances—Parol Trusts—Trusts and Trustees—
    Mortgage — Sales — Mortgagee a Purchaser — Bona Fide—Evi-
    dence.**
    Two brothers, R. and F., bought certain lands, and to secure
    the purchase price executed a deed in trust to S., giving certain
    cotton bonds payable to L. and S. Before the death of R., L.
    and S. assigned the bonds to E. Brothers, and upon default the
    lands were sold by S. under the terms of the deed in trust, and
    conveyed to the purchaser, E., of the firm of E. Brothers. Subse-
    quently, E. sold the lands to F. for the same amount of cotton
    bonds, i. e., bonds payable in a certain amount of merchantable
    lint cotton. In an action brought by the heirs at law of R. to
    declare a parol trust in their favor in the lands thus conveyed
    to F.: *Held*, that while the fact that F. bought the land from

E. for exactly the same amount of lint cotton that R. and F. had agreed to pay L. and S., it was open to explanation, and, different inferences being capable of being drawn from the facts, the question was properly left for the jury to say whether, under the circumstances of the case, F. was a *bona fide* purchaser of the lands in his own right, or as a tenant in common with R.

Appeal from *Ferguson, J.,* at March Term, 1911, of Pitt.

The plaintiffs, children and heirs of Robert A. McLawhorn, deceased, bring this action against the *feme* defendant, Bettie Harris, only child and heir of L. Francis McLawhorn, deceased, to set up and establish a parol trust as against said Francis McLawhorn in the lands described in the pleadings, claiming to own one undivided half of the lands in common with the said Francis. His Honor submitted these issues:

1. Did L. F. McLawhorn take title to said land from J. P. Elliott in trust to hold one-half of the same for the benefit of plaintiffs? Answer: No.

2. At the time of the purchase of the land described in the complaint by L. F. McLawhorn, did he agree to take and hold said land as trustee for himself and the children of R. A. McLawhorn? Answer: No.

The plaintiffs moved for a new trial. Motion overruled. The plaintiffs excepted and appealed from the judgment rendered.

*Harry Skinner for plaintiffs.*
*F. G. James & Son and L. I. Moore for defendants.*

Brown, J. The land in controversy was conveyed to Robert and Francis McLawhorn, brothers, in 1890, by Harry Skinner, the purchase price payable in cotton bonds. To secure the delivery of the cotton, certain bonds were taken payable to the copartnership of Latham & Skinner and secured by deed in trust to Harry Skinner. Before the death of Robert McLawhorn, which occurred in 1893, the cotton bonds were duly assigned by Latham & Skinner to Elliott Brothers, of Baltimore.

In default of the discharge of the bonds, the land was advertised and sold under the trust on 24 March, 1894, by Harry

Skinner, who conveyed it on said date to J. P. Elliott of said firm. On 28 May, 1894, J. P. Elliott conveyed the land to L. Francis McLawhorn, defendant Bettie's father, and took from him on same day a mortgage on the land securing the purchase price, to wit, 100 bales, 500 pounds each, merchantable lint cotton. This is the same price in cotton which the brothers, Robert A. and L. Francis McLawhorn, contracted to pay Latham & Skinner for the land.

There are nine assignments of error, all of which have received our consideration. None of them are of sufficient importance to justify an extended discussion, except the sixth.

As one exception relates to a juror, we say that we do not think it is well that deputy sheriffs who summon jurors, mingle with and have charge of them, should serve as such during the terms of court when they are acting for the sheriff.

In their discretion, the trial judges may well excuse them, but there is no statute, of which we are aware, which disqualifies them. But in this case Manning, the juror challenged, was not a deputy sheriff, but had been an officer in charge of another jury.

There were certain deeds and records introduced, over plaintiff's objection, which are excepted to as irrelevant and incompetent, but it is manifest that they did not bear upon the real issue, and if erroneously received, the error was entirely harmless.

If there is any error it lies in the refusal of the court to charge the jury that if they believe the evidence in the case to answer the first issue "Yes."

The plaintiffs rest their case upon two contentions, viz.:

*a.* That Francis McLawhorn purchased the land from J. P. Elliott in May, 1894, upon an express agreement that he would hold the land in trust for himself and the plaintiffs, his brother's children. This claim is embodied in the second issue. Under this issue the plaintiffs attempted to establish an express trust, and it must be admitted that they introduced parol evidence which would have well warranted the jury in finding it for them. But the fact was controverted and other evidence offered tending to deny the existence of any such agreement.

The charge of the court upon this phase of the case presented the plaintiffs' contention with fullness and clearness and was as favorable to them as they were entitled to.

*b.* The other contention is based upon two theories: First, that J. P. Elliott bought at his own sale, and consequently the sale was void; that the relation of mortgagor and mortgagee continues to exist, and that therefore the tenancy in common between the plaintiffs and Francis McLawhorn has never been severed.

We do not find anything in the record upon which to found such claim. The pleadings state that the sale was made by Skinner, the trustee in the deed, and the deed to Elliott executed by him and introduced by plaintiffs contains every essential recital—among others, that Skinner advertised the land according to the terms of the deed and sold it to Elliott, the highest bidder. There is no evidence whatever which tends to controvert this or to show that Elliott or his attorney made the sale or controlled it.

As the holder of the bonds secured in the deed, Elliott had a right to bid at the sale by the trustee. It was not his sale, but Skinner's, the person appointed by the mortgagors to make it, and in whom reposed the legal title.

There is no evidence or even suggestion of any fraud, undue advantage, or oppression. So far as the record discloses, the sale was fair, open and "aboveboard," and made by the person vested with the power to sell.

The second theory is that J. P. Elliott purchased the land, not for himself, but for Francis McLawhorn, and that inasmuch as he could not legally acquire title to the land adverse to his cotenants at said sale, Elliott could not do so for him.

The only evidence upon which to base this contention is that Elliott bought the land on 24 March, 1894, and conveyed it to L. F. McLawhorn on the 28th of following May, and the further fact that he sold it for 100 bales of cotton, the same price that the two brothers had agreed to pay Latham & Skinner for it.

These may be suspicious circumstances, but it is manifest they do not warrant the charge asked for by plaintiffs. They

McLawhorn v. Harris.

are open to explanation and different inferences may be drawn from them. They were properly submitted to the jury for what they were worth.

Assuming that Elliott purchased the land for himself or his firm to save his debt, we cannot agree with the learned counsel for plaintiff, that Francis McLawhorn could not afterwards acquire title adverse to the plaintiffs, his former cotenants.

We recognize the just principle that a cotenant, while such relation exists, may not acquire an outstanding title or lien upon the common property and hold it for his own exclusive benefit. His cotenants may share it with him. *Jackson v. Baird*, 148 N. C., 29. But, nevertheless, a tenant in common as such is not a trustee for his cotenant. *Saunders v. Gatlin*, 21 N. C., 92.

It is also true that where a cotenant in common acquires title from a sale under a deed of trust made by all the cotenants for a debt binding all, and the sale is caused by his failure to pay his share of the debt, he cannot under his rights, so derived, hold the land against his cotenants. *Reed v. Buchannan*, 57 S. E., 769, 61 W. Va., 552.

But the jury has not accepted the theory that Elliott purchased for Francis McLawhorn, and there was very little evidence, so far as Elliott was concerned, to support that claim. Therefore, when the trustee conveyed all the land to Elliott, the unity of possession was destroyed and the tenancy in common ended. Unity of possession is the only unity essential to such cotenancy. Anything that operates to destroy this unity will dissolve the cotenancy in common. *Sutton v. Jenkins*, 147 N. C., 16; 17 Am. and Eng. Ency., 711.

After the tenancy in common is actually dissolved, there is nothing in the law which forbids a former tenant in common from acquiring the entire property. He then has the same rights as any other individual. *Sutton v. Jenkins, supra; Jackson v. Baird*, 148 N. C., 29.

Upon a review of the record we find

No error.