STACY, C. J., concurring.
CLARKSON, J., concurring.
Civil action for an accounting and to recover damages for breach of trust for wrongful conveyance of real property purchased by defendant corporation at foreclosure sale and resold to an innocent purchaser.
In June, 1924, plaintiff purchased from B. C. Talley a house and lot in Charlotte, subject to a first mortgage lien thereon in favor of the defendant corporation to secure an indebtedness of $3,500.00, upon which there was then due $2,734.71. There were also outstanding two other mortgage liens in the sum of $1,936.62 and $1,328.67, respectively, which were assumed by the plaintiff. By payments and refinancing, from time to time, the plaintiff reduced the total indebtedness to $2,100. On 1 November, 1932, he executed a paper writing in the form of a deed of trust to the defendant E. Y. Keesler, as trustee, to secure a note in that amount, payable to the corporate defendant. There was default in the payment of the regular installments maturing on the last cited note and by reason thereof the trustee, after advertisement, foreclosed the instrument by sale 4 May, 1936, and on 16 May, 1936, conveyed said premises, by deed of foreclosure, to the corporate defendant, the purchaser at the sale. On 8 October, 1938, the corporate defendant conveyed the premises to C. P. Wood and wife by fee simple deed.
The purchase price at the sale was $1,870. The consideration for the sale to Wood and wife is not disclosed but it does appear that at the time the corporate defendant took a purchase money mortgage, or deed of trust, on the premises in the sum of $3,300. *Page 666 
The defendant Keesler, the trustee named in the instrument dated 1 November, 1932, securing the indebtedness of the plaintiff to the corporate defendant, was secretary and treasurer of the corporate defendant in charge of personnel of its office. As such it was his business to handle savings and make loans and he was the active officer in charge of its business. He conducted the sale, as trustee, and entered the bid at the sale for the corporate defendant. At the time he had in his possession the following written memorandum made out in his own handwriting but signed by the assistant secretary, to wit:
 "MEMO MUTUAL B. L. ASSOCIATION 119 East Third Street Charlotte, N.C. 5/4/36 E. Y. Keesler, Trustee
This is to be considered our bids as indicated for properties to be foreclosed by you this day:
 Delane, Preston Ross ................. 900 to 1155 " " " .................. 900 to 1155 Mrs. Alice Hutchinson .................. 490 to 523 J. W. Mills ............................ ___ 1870 W. B. Webster .......................... 2000 to 2650
 Mutual B. L. Ass'n. by G. Meb Long, Asst. Secy."
The corporate defendant having conveyed the property formerly belonging to the plaintiff to an innocent purchaser, the plaintiff instituted this action to recover rents and profits received, or which should have been received, by the defendants from the date of the foreclosure sale to the date of the conveyance to Wood, during which time the defendants were in possession thereof, and for damages for the wrongful conversion of his equity in said land.
At the conclusion of the plaintiff's evidence in chief, on motion of the defendants, the court below entered judgment dismissing the action as of nonsuit. Plaintiff excepted and appealed.
The instrument the plaintiff executed to secure the indebtedness to the corporate defendant contained the following provisions: "It being distinctly understood and agreed by the parties hereto *Page 667 
that in the event of default in compliance with the terms hereof for a period of thirty days that the party of the second part shall be entitled to enter into possession of said lands for the purpose of collecting the rents and profits arising therefrom and applying the same upon the debts hereby secured, and he is hereby authorized and empowered so to do without formality or process of law. But if the said party of the first part shall make default in the payment . . . or shall make default in any of the aforesaid stipulations . . . then, and in such event, the said E. Y. Keesler shall have the right, and it shall be his duty when requested by the party of the third part, to immediately enter upon and take possession of said premises hereby conveyed and sell the same at public auction, etc."
The plaintiff contends that the provision permitting the grantee to take possession upon default makes the taking of possession a condition precedent to the right to foreclose. This contention cannot be sustained. Upon default of the mortgagor the mortgagee is entitled to possession.Weathersbee v. Goodwin, 175 N.C. 234, 95 S.E. 491; Montague v. Thorpe,196 N.C. 163, 144 S.E. 691. The declaration of this right in the instrument does not preclude foreclosure prior to entry and assumption of possession. We do not consider the Massachusetts cases cited by plaintiff binding on us under the laws of this State.
Originally there could be no foreclosure of a mortgage except through a suit in equity. "The idea of allowing the mortgagee to foreclose the equity of redemption by a sale made by himself, instead of a decree for foreclosure and a sale made under the order of the court, was yielded to after great hesitation, on the ground that in a plain case when the mortgage debt was agreed on and nothing else was to be done except to sell the land, it would be a useless expense to force the parties to come into equity when there were no equities to be adjusted, and the mortgagor might be reasonably assumed to have agreed to let a sale be made after he should be in default." Kornegay v. Spicer, 76 N.C. 95; Eubanks v. Becton,158 N.C. 230, 73 S.E. 1009.
The right of the mortgagee to foreclose a power of sale contained in the instrument is now generally accepted. However, as there are many opportunities for oppression in the enforcement of such power, courts of equity are still disposed to scrutinize the exercise thereof for the protection of the mortgagor. Eubanks v. Becton, supra. This right, now, as in the beginning, must be exercised under well recognized restrictions. A mortgagee may not purchase at his own sale; if he does so, he does not acquire an absolute estate. The sale does not alter the relation of mortgagor and mortgagee existing between the parties. Whitehead v. Hellen,76 N.C. 99; Shew v. Call, 119 N.C. 450; McLeod v. Bullard, 84 N.C. 531;Howell v. Pool, 92 N.C. 450; Dunn v. Oettinger Bros., *Page 668 148 N.C. 276; Rich v. Morisey, 149 N.C. 37. Such sale is voidable at the election of the mortgagor. Joyner v. Farmer, 78 N.C. 196; Gibson v.Barbour, 100 N.C. 192; Rich v. Morisey, supra; Owens v. Mfg. Co.,168 N.C. 397, 84 S.E. 389; and may be disavowed by the mortgagor. Austinv. Stewart, 126 N.C. 525. While the mortgagee, upon default, is entitled to possession as against the mortgagor, Weathersbee v. Goodwin, supra;Montague v. Thorpe, supra; he is responsible to the mortgagor for rents and for all acts and omissions as a tenant, the mortgagor being entitled to credit on the mortgage debt for rents, profits and damages; Morrison v.McLeod, 37 N.C. 108; Green v. Rodman, 150 N.C. 176, 63 S.E. 732; and when the mortgagee has purchased at his own sale and then reconveyed the property to an innocent purchaser the mortgagor may elect to disavow the foreclosure sale and recover damages for the wrongful conversion of his equity of redemption. Warren v. Susman, 168 N.C. 457, 84 S.E. 760;Davis v. Doggett, 212 N.C. 589, 194 S.E. 288.
In the enforcement of these restrictions by courts of equity it has now become well established that although mortgages with power of sale are not looked upon with as much disfavor as they once were, still, courts of equitable jurisdiction will guard the rights of the mortgagor with jealous care and the rule generally prevails that a mortgagee with power to sell is a trustee, and, as such, is not allowed to purchase at his own sale so as to render the sale binding or cut off the equity of redemption. A mortgagee cannot be both vendor and purchaser, and if he purchases at his own sale, he is still a trustee for the mortgagor. It is not of moment that in purchasing he was wholly innocent and free of fraud. 19 R. C. L., Mtges., sec. 425. It is the opportunity for oppression that such conduct presents which invokes the equitable prohibition. Davis v. Doggett, supra.
That it is inequitable to permit a mortgagee to purchase the mortgagor's equity of redemption apparently was first declared (inferentially) by this Court in Lee v. Pearce, 68 N.C. 76, and in express terms in Whitehead v.Hellen, supra. The principle was fully discussed and reaffirmed in McLeodv. Bullard, supra.
The restrictions upon the creditor in respect to the security when the conveyance was made directly to him in the form of a mortgage brought about the creation of deeds of trust as a more acceptable form of conveying real property for security. This form of security has now come into general and, in some instances, universal use. Pomeroy Eq. Jur., sec. 995; Reynolds v.Waterville, 92 Me. 292, 42 A. 553. When a sale is had under power in this form of security the creditor may bid at the sale, McLawhorn v.Harris, 156 N.C. 107, 72 S.E. 211; Hayes v. Pace, 162 N.C. 288, 78, S.E., 290, 37 L.R.A. (N.S.), 831, for, by *Page 669 
the intervention of a disinterested third party, the opportunity for oppression is removed.
The object of deeds of trust is, by means of the introduction of trustees as impartial agents of the creditor and debtor alike, to provide a convenient, cheap and speedy mode of satisfying debts on default of payment; to assure fair dealing and eliminate the opportunity for oppression; to remove the necessity of the intervention of the courts; and to facilitate the transfer of the note or notes secured without the necessity for a similar transfer of the security.
The relaxation of the strict rules equity imposes upon the mortgagor in relation to deeds of trust is predicated upon the theory that the trustee is a distinterested third party acting as agent both of the debtor and of the creditor, thus removing any opportunity for oppression by the creditor and assuring fair treatment to the debtor. He is trustee for both debtor and creditor with respect to the property conveyed. A creditor can exercise no power over his debtor with respect to such property because of its conveyance to the trustee with power to sell upon default of the debtor.Simpson v. Fry, 194 N.C. 623, 140 S.E. 295; Woodcock v. Merrimon,122 N.C. 731; Hinton v. West, 207 N.C. 708, 178 S.E. 365.
The trustee for sale is bound by his office to bring the estate to a sale under every possible advantage to the debtor as well as to the creditor. Johnston v. Eason, 38 N.C. 330, and he is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and the creditor alike, apprising both of the intention of selling, that each may take the means to procure an advantageous sale. Anon. case, 6 Mad., 10; Johnston v.Eason, supra. He is charged with the duty of fidelity as well as impartiality, of good faith and every requisite degree of diligence, of making due advertisement and giving due notice. Hinton v. Pritchard,120 N.C. 1; Davenport v. Vaughn, 193 N.C. 646, 137 S.E. 714; Chas. GreenReal Est. Co. v. St. Louis Mut. House Bldg. Co., 196 Mo., 358,93 S.W. 1111. Upon default his duties are rendered responsible, critical and active and he is required to act discreetly, as well as judiciously, in making the best use of the security for the protection of the beneficiaries. Maryland v. Farmers Loan TrustCo., 24 Hun. (N. Y.), 297.
In the present case the grantee in the deed of trust is the secretary-treasurer, manager and chief active executive officer in charge of the personnel of the corporate defendant, the creditor whose debt is secured. As such he negotiated the loan; it was his duty to make collections; upon default it was for him to direct a sale of the security; it was to him the debtor was required to go to seek indulgence in respect to the debt, or a *Page 670 
delay in the date of sale; and it was for him, in case of foreclosure, to either make or direct the advertisement and sale. Upon sale under foreclosure it was his duty to execute the deed of foreclosure. Should the corporation desire to purchase at the foreclosure sale it was for him to ascertain and determine the balance due on the debt and the amount to be bid at the sale (and this he undertook to do).
These duties devolved upon him whether the instrument was executed to him, as trustee, or to the corporation in the form of a mortgage.
The evidence in this record indicates that the trustee, in fact, acted both for himself, as trustee, and for the creditor, as its chief executive officer. He, as the chief executive officer, demanded of himself, as trustee, that the property be foreclosed. As trustee, he advertised and sold. As manager of the creditor, he determined the amount to be bid and directed himself, as trustee, to place a bid in that amount. Then, as trustee, he placed the bid for the creditor and made the sale thereon. Prior to the sale he prepared a memorandum in his own handwriting, which was signed by his subordinate, at his direction, authorizing bids at five separate foreclosure sales to be made on the same date. As to four of these he gave himself discretion to bid from a minimum to a maximum amount. While the written memorandum designates only one amount to be bid at the foreclosure of the instrument under consideration, it cannot be gain said that if he had the authority to vest in himself discretionary power prior to the sale, he possessed that same discretion at the sale so that he could have bid more if he deemed it wise to do so.
The personality of the trustee, as such, and as the chief executive officer of the creditor cannot be separated. His duties are dual and inconsistent. He does not and cannot occupy that position of disinterested impartiality which is the foundation stone on which the distinction in the law relating to deeds of trust and mortgages rests. The opportunity for oppression is present with as much potency as when the creditor is the grantee and the instrument is in the form of a mortgage.
Equity regards substance not form and is not bound by names parties may give transactions. Shoemaker v. Eastern Bank Trust Co., 52 F.2d 925;Moring v. Privott, 146 N.C. 558; Whitehead v. Hellen, supra. A court of equity seeking to do justice among all parties looks at the spirit and not the form of the transactions. Trust Co. v. Spencer, 193 N.C. 745,138 S.E. 124; Hinton v. West, supra. "It regards corporate organization objectively and realistically, unencumbered by fictions of corporate identity, and thus, brushing aside form, deals with substance. 1 Fletcher Cyc. Corp., Ferm. Ed., sec. 45." Unemployment Compensation Commission v.Coal Co., ante, 6. Having regard for these principles, under the facts of this case, we are led *Page 671 
irresistibly to the conclusion that an instrument — in form a deed of trust — executed to the chief active executive officer of a corporation, to secure a debt to the corporation is, in effect, a mortgage, and the law relating to the foreclosure of mortgage deeds rather than the law relating to trust deeds is applicable.
In this conclusion there is no suggestion of wrongdoing on the part of anyone. We merely determine the law to be applied to the facts of this case.
The exception of the plaintiff to the judgment dismissing the action as of nonsuit must be sustained.
Reversed.